44 291
77 134

## AMELIA CAMP vs. STEVENS ROGERS.

The statute (Gen. Statutes, p. 234, sec. 21,) provides that the driver of any vehicle, meeting another on the public highway, who shall neglect to turn to the right, and thereby drive against the vehicle so met and injure its owner, or any person in it, or the property of any person, shall pay to the party injured treble damages; and that "the owner of the vehicle so driven shall, if the driver is unable to do so, pay such damages, to be recovered by writ of

Camp v. Rogers.

scire facias." Held that, by the word "owner" in the last clause, the person in control of the vehicle, either mediately or immediately, was intended, and not necessarily the actual owner.

Any other construction would make the owner of a vehicle liable for the acts of a person in possession of it, over whom he had no control and to whom he did not stand in the relation of master or principal.

An act that thus arbitrarily and without reason makes one person liable for the acts of another is void, either as against natural justice or as violating that article of the constitution which forbids the taking away of any person's property without due process of law.

It is to be presumed that the legislature in enacting a law intended to make one that should be reasonable and just, and where a law admits of a construction that will make it so, it is the duty of a court to uphold it by giving it such a construction, where under a literal construction it would have to be held void.

SCIRE FACIAS, brought to the Court of Common Pleas of Hartford County, under the statute (Gen. Statutes, tit. 16, part 1, chap. 7, sec. 21,) which provides that "every driver of any vehicle who shall, by neglecting to conform to the preceding section, [requiring him to turn to the right on meeting any other vehicle upon the public highway,] drive against another vehicle and injure its owner or any person in it or the property of any person, * * * shall pay to the party injured treble damages and costs; and shall, if the injury be done designedly, forfeit to the state not more than one hundred dollars. And the owner of such vehicle shall, if the driver is unable to do so, pay the damages provided in this and the preceding section, to be recovered by a writ of scire facias." The case was tried to the court on the general issue, and the following facts found.

On the 20th day of September, 1875, the defendant, Rogers, was the keeper of a livery stable in Hartford, and on that day let a horse and carriage to T. S. Dart for a few hours for pleasure driving, for the use of which Dart was to pay a reasonable compensation. Dart was not in the employ or the agent of Rogers, but hired the horse and carriage in the usual way.

While Dart was driving the team upon Washington street in the city of Hartford, and going in a southerly direction, he met the plaintiff's son, who was driving a horse and wagon of the plaintiff, and going in an opposite direction. By the

carelessness of Dart, who was driving upon the wrong side of the street, one of the shafts of the carriage in which Dart was riding was forced about two inches into the breast of the horse driven by the son of the plaintiff, in consequence of which the horse of the plaintiff died.

The plaintiff brought suit, alleging the foregoing facts, against Dart, before the Court of Common Pleas for Hartford County, founded upon the above statute, and recovered judgment for $300 damages and $77.34 costs. Rogers was a witness on the trial. Execution was issued against Dart and returned unsatisfied, he having no property to respond to the judgment. The present suit is brought against Rogers, under the provisions of the above statute.

Upon these facts the case was reserved for the advice of this court.

*C. H. Briscoe* and *G. M. Spencer*, for the plaintiff.

1. The act under which this suit is brought was passed originally in 1797, and the provision that the owner shall, if the driver be unable, pay the damages, occupied an entire section. Stat. 1797, pages 473 and 474, sections 1, 2, 3, 4. This section was converted into a single sentence in 1821, and the language has been since often altered. Revision of 1821, p. 438; of 1849, p. 289; of 1866, p. 321. The intention of the legislature is very clear from the language of the statutes.

2. The act is not unconstitutional. The legislature says in effect, to the owners of vehicles, that if they put them into the hands of irresponsible persons to use, they shall be liable for their negligence or carelessness in such use. This is but a slight step beyond holding a person liable for the negligence of a servant in driving, or for other acts in his employ. *Kimball* v. *Cushman*, 103 Mass., 194; *McCahill* v. *Kipp*, 2 E. D. Smith, 413; 1 Swift Dig., 67. Or where a city is held liable when a person is pushed off from an unguarded place by a crowd. *Alger* v. *City of Lowell*, 3 Allen, 402. Or holding a town liable for acts of third persons. *Davis* v. *Leominster*, 1 Allen, 182; *City of Chicago* v. *Robbins*, 2

Black, 423.   Or holding owners of vessels liable for injuries caused by the negligence of any one on board.   *Yates* v. *Brown*, 8 Pick., 27.   The statutes are full of instances where the legislature has exercised the power of restraining owners in the use of their property without question.   Such are the laws relative to dogs; to rams going at large; to impounding cattle; and to the sale of intoxicating liquors, and many others.

*S. F. Jones*, for the defendant.

1.   If this statute is to be construed literally, and the owner of any vehicle thus driven against the vehicle of another is to be held liable merely because he is owner and without reference to any relation of master and servant or principal and agent between the owner and the person driving, then we contend that the statute *is void*, as being against clear principles of natural justice, and against the constitution of the state, art. 1, sec. 8, which provides that the property of no person shall be taken from him "without due process of law."   *People* v. *Morris*, 13 Wend., 328; *Ham* v. *McClaws*, 1 Bay, 93; Cooley's Const. Lim., 175, 355, 358.   The law might just as reasonably have provided that every *maker* of a carriage should forever be liable for the damage done by any irresponsible person owning or driving it.   It would be just as valid a statute if it had provided that the owner of a horsewhip should always be liable for any damage done with it by any irresponsible person.   The absurdity of such a statute can only be equalled by the absurdity of the claim that it does not violate the most obvious principles of natural justice.

2.   Where a statute upon one construction violates constitutional principles and upon another can be made consistent with them, the courts will be astute in giving it such a construction as will save it from invalidity.   This is a rule of constant application in courts.   *Dow* v. *Harris*, 4 N. Hamp., 17; Cooley's Const. Lim., 184; *Woodruff* v. *Neal*, 28 Conn., 165; *Hubbard* v. *Callahan*, 42 id., 524.

3.   The statute will admit of such a construction as will not invalidate it.   The word *driver* would seem to be intended

to apply, not to any person who happened to be driving, (who might be the owner himself,) but to a person driving as a *servant*—the word *driver* being correlative to the word *owner* in the rest of the statute—the one intending the servant, the other the master. The word *owner* may properly and naturally be taken to mean, not the technical owner, but any person having a special property in the vehicle—as a borrower. Such a special property makes one an owner in a certain sense. This meaning of the word is the more probable, as it is used in the same section, with regard to the vehicle injured, where the statute says: "shall drive against another vehicle and injure its *owner*." Suppose this had been all, and a borrower were riding in the carriage and were injured, would it not be held that he was *pro hac vice* the owner, and so entitled to damages?

4. If, however, the court has still any doubts about the completeness of our defence, then we finally put ourselves upon the narrower construction of the statute to which we feel sure the court will resort before holding us liable. 1st. The statute says: "shall drive against another *vehicle*." The driver did not drive against the plaintiff's *vehicle*, but only against her *horse*. It is not enough to say that a vehicle implies a horse drawing it. This statute is in abrogation of clear common law rights, and is to be construed *strictly*. It might just as well be said that the statute means, by "owner of the vehicle," the owner of the *wagon and horse* that is being driven. If it is to be so construed this will be an important change, because one man may own the horse and another the vehicle, and in that case the owner of the vehicle, now bound to pay the whole, would have a right of contribution against the owner of the horse. The word "vehicle," being twice used in the same section, must be taken to have the same meaning in both cases.—2d. The statute says: "shall drive against another vehicle and injure its owner or any person in it, or the property of any person." Here there is no mention of the *horse* as being injured—unless it is covered by the words "or the property of any person." But this evidently means *any property in the vehicle*. The language is

to be observed—"shall injure *its owner*, or *any person in it*, or *any property*"—meaning any property *in it*. That is, shall injure *any person or any property in the vehicle*. This is very clear if we look at other parts of the same section. The next following clause is: "shall drive against any vehicle traveling the same course and shall injure any person, or the horses or other property of any person." Here the same language is used, yet it clearly does not embrace the horse or horses, as they are specially mentioned. Besides, as the word "horses" is used in this clause, why was it not used in the other, if the horses were intended? Its use here shows that the draftsman had it in mind, and that he designedly omitted it in the clause under discussion.

LOOMIS, J. If the construction which the plaintiff contends should be given to the statute upon which her right to recover must depend, then there can be no case in which the owner of a vehicle would not be liable, not only for the actual damage caused by a violation of the statute on the part of any person driving it, but for the threefold and punitive damages given by the statute against the driver. If the owner of a vehicle should leave it, with his horse attached to it, at a post by the side of the street, and in his absence a thief or trespasser should take it, and by reckless driving damage a horse or carriage that he happened to meet, the owner would be liable. So if one lends his vehicle to a friend, and he again lends it to a stranger, the owner would be liable, not only for any damage done by the stranger in driving it, but even by the servant of the stranger. Indeed we should have this strange anomaly—that if my neighbor borrows my carriage and is riding in it with his servant and the latter wilfully neglects to turn to the right and injures a team that he meets, while my neighbor would not be liable as master, because the act of his servant was willful, I should yet be liable as owner, and that too with no right to indemnity from the master. Such a result is in itself so absurd as to show, either that the statute ought not to be so construed as to produce it, or that, if this be a correct construction, it is so far void,

either as manifestly against natural justice, or as violating that article of the constitution which forbids the taking away of any person's property "without due process of law." If such a law, so construed, were to be held valid, then a law that should by a merely arbitrary rule make one man liable for the debts of another would be valid. Indeed there is no limit that could be put to the most arbitrary acts of the legis- lature in making one man liable for the acts of another.

As to the meaning of the expression "due process of law," as used in many of the constitutions of the states of the Union, Cooley, in his Constitutional Limitations, p. 355, says: "We have met in no judicial decision a statement that embodies more tersely and accurately the correct view of the principle we are considering, than the following from an opinion of Mr. Justice Johnson of the Supreme Court of the United States: 'The good sense of mankind has at length settled down to this—that these words were intended to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of pri- vate rights and distributive justice.'" Again, he says, (p. 358,) speaking of the cases where courts of equity order the property of one man to become vested in another: "In these cases the courts proceed in accordance with 'the law of the land,' and the right of one man is divested by way of enforc- ing a higher and better right in another." Again he says (p. 175): "The bills of rights in the American constitutions forbid that parties shall be deprived of property except by the law of the land; but if the prohibition had been omitted, a legislative enactment to pass one man's property over to another would nevertheless be void." In *People* v. *Morris*, 13 Wend., 328, it is said that "vested rights of the citizen are sacred and inviolable against the plenitude of power in the legislative department." In *Ham* v. *McClaws*, 1 Bay, (So. Car.,) 93, it is laid down that "statutes passed against the plain and obvious principles of common right and com- mon reason are null and void, so far as calculated to operate against those principles;" and in *Morrison* v. *Barksdale*, Harper, 101, that "if absurd consequences, or those mani-

festly against common reason, arise collaterally out of a statute, it is pro tanto void." And see *Welch* v. *Wadsworth,* 30 Conn., 150.

If upon the construction we have been considering the law in question would be void, or even of doubtful validity, it is our duty to find, if we are able, some other construction that will relieve it of this difficulty. If a law can be upheld by a reasonable construction, it ought to be done, and it is to be presumed that the legislature in passing it intended to enact a reasonable and just law, rather than an unreasonable and unjust one.

We think the statute intended by the word "owner," not the literal and technical owner, but the person in possession and control, either mediately or immediately, of the vehicle. Any person hiring a carriage is, for the time for which he takes it, in a certain sense its owner. He has a special property in it and could maintain trespass for it—and while his right to it continues, trover. This meaning of the word "owner" is the more probable as it is used in that sense in another place in the same section, where the statute says, " shall drive against another vehicle and injure its *owner,*" evidently meaning an owner that is riding in it.

There is a reason for the passing of the statute in this view of the meaning of the word. In the absence of such a statutory provision the master would not be liable for an injury done by his servant in driving, where it was done intentionally and maliciously. The statute wipes out this distinction and makes the master liable for even the intentional and malicious act of his servant in the particulars mentioned in it, in every case where the servant is irresponsible. There may be a good reason for this, as the master employs the servant and so in some measure is responsible for his character; besides which he has a remedy against him and can indemnify himself from his wages. And the subjecting of the owner to a liability for the threefold damages recovered of the driver can be justified, or indeed accounted for, only by supposing the master to be intended.

It is a rule of very frequent application that courts will be

astute in giving a construction to a statute that shall save it from invalidity. Cooley, in his Constitutional Limitations, page 184, says:—"The duty of the court to uphold a statute when the conflict between it and the constitution is not clear, may require it in some cases, where the meaning of the constitution is not in doubt, to lean in favor of such a construction of the statute as might not at first view seem most obvious and natural. The court, if possible, must give the statute such a construction as will enable it to have effect." In *Dow* v. *Harris*, 4 N. Hamp., 17, the court say it is their duty "so to construe every act of the legislature as to make it consistent, if possible, with the provisions of the constitution, without stopping to inquire what construction might be warranted by the natural import of the language used." Plowden says that "in some cases the letter of an act of Parliament, in order to effectuate its object, is restrained, in others it is enlarged, and in others still the construction is contrary to the letter." And see remarks of the court in *Clark* v. *Hoskins*, 6 Conn., 109, *Sage* v. *Hawley*, 16 Conn., 113, and *Bishop* v. *Vose*, 27 Conn., 9.

Under the construction which we give to the statute the defendant is not liable by virtue of his mere ownership of the vehicle. And as it is found that Dart had hired the horse and carriage in the usual way, the defendant being a livery stable keeper and making a business of letting teams, and that there was no relation of master and servant between them, we think the defendant can not be held liable on any ground, and advise the Court of Common Pleas to render judgment in his favor.

In this opinion the other judges concurred.