KEVIN HOPE ET AL. *v.* FRANK CAVALLO ET AL.

HOUSE, C. J., COTTER, SHAPIRO, LOISELLE and MACDONALD, JS.

Argued June 6—decided September 20, 1972

*David M. Reilly, Jr.,* for the appellants (plaintiffs).

*Philip R. Shiff,* with whom was *Alan H. W. Shiff,* for the appellees (defendants).

COTTER, J.  This is an action in two counts to recover damages for personal injuries and property damage alleged to have been sustained by the plaintiffs as the result of a collision involving a motor vehicle owned and operated by the plaintiff Bernard M. Hope which had stopped for a red light and was struck in the rear by a two-and-one-half-ton cargo truck operated by the defendant Frank Cavallo.  At the time of the accident Cavallo was acting in the scope of and in the course of his employment with the Connecticut Air National Guard.  The plaintiffs brought suit in the first count against the state of Connecticut and against Frank Cavallo individually in the second count of the complaint.

The defendant Cavallo filed a special defense to the second count of the complaint, alleging that at the time of the collision he was operating a vehicle in the performance of his duties and within the scope of his employment by the Connecticut Air National

Guard, so that he was immune from liability as provided by § 4-165 of the General Statutes.[1] The plaintiffs demurred to the defendant Cavallo's special defense, claiming, inter alia, that § 4-165 violated article 1, § 1, of the Connecticut constitution because it grants a special privilege to a set of men to act negligently without liability. The court overruled the demurrer.

The defendant state of Connecticut demurred to the plaintiffs' original complaint on the ground that the plaintiffs failed to state a cause of action against it because they did not allege that the vehicle operated by the defendant Cavallo was owned and insured by the state as required by § 52-556 of the General Statutes.[2] The plaintiffs thereafter amended their complaint and alleged that the vehicle operated by Cavallo was owned by the state of Connecticut. The state denied ownership of the vehicle and moved for summary judgment, claiming that at the time of the alleged collision the truck in question was owned by the United States of America and merely on loan to the state.[3] The court denied the defendant's mo-

---

[1] "[General Statutes] Sec. 4-165. IMMUNITY OF STATE OFFICERS AND EMPLOYEES FROM PERSONAL LIABILITY. No state officer or employee shall be personally liable for damage or injury, not wanton or wilful, caused in the performance of his duties and within the scope of his employment. Any person having a complaint for such damage or injury shall present it as a claim against the state under the provisions of this chapter."

[2] "[General Statutes] Sec. 52-556. ACTIONS FOR INJURIES CAUSED BY MOTOR VEHICLES OWNED BY THE STATE. Any person injured in person or property through the negligence of any state official or employee when operating a motor vehicle owned and insured by the state against personal injuries or property damage shall have a right of action against the state to recover damages for such injury."

[3] The vehicle was issued to the state of Connecticut by the United States pursuant to title 32, § 710 of the United States Code. Section 710 (a) provides that "[a]ll military property issued by the United States to the National Guard remains the property of the United States."

tion for summary judgment, stating that a question of law existed as to the ownership of the truck. The defendants then moved, pursuant to Practice Book § 306, that the court make a finding that the vehicle in question was not owned by the state as required by General Statutes § 52-556. The plaintiffs in response thereto thereupon filed an amendment to their complaint. They made the first count of the complaint, concerning the state of Connecticut, more specific by adding, inter alia, the allegations that the vehicle driven by Frank Cavallo was owned by the state of Connecticut, in that the state at the time of the accident, through the Connecticut Air National Guard, had the exclusive control and possession of it under the provisions of Air National Guard Regulation No. 67-1; that the state had a special ownership in the vehicle as bailee at the time of the collision; and that the state had specifically insured the vehicle under the definition in its insurance policy defining the term "owned automobile." The trial court found that as a matter of law the state did not own the vehicle and that there could be no liability on the part of the state under § 52-556.

Motions for judgment in favor of the defendant Cavallo and the defendant state of Connecticut were granted. The plaintiffs appealed from the judgment rendered in favor of the defendants and argue that the state owned the vehicle in question as required by § 52-556 of the General Statutes, and that § 4-165 of the General Statutes is unconstitutional.

The plaintiffs assign error, inter alia, in the failure of the trial court to conclude that § 52-556 permitted an action against the state of Connecticut.

Whether § 52-556 is to be applied in this case turns on the construction given to the word "owned" as used in the statute. Primarily we are concerned

only with the word "owned" as used in § 52-556. That word, used as an adjective, is defined as "held as one's own possession." Webster, Third New International Dictionary. Although we are concerned only with the word "owned" as found in the statute, we note that the courts, in numerous instances, have had occasion to construe the word "owner" as related to motor vehicles. The word "owner" is found in numerous statutes and has no commonly approved usage or fixed meaning, "but must be interpreted in its context and according to the circumstances in which it is used." *Warren* v. *Borawski,* 130 Conn. 676, 679, 37 A.2d 364; *Brown* v. *New Haven Taxicab Co.,* 92 Conn. 252, 254, 102 A. 573; 63 Am. Jur. 2d, Property, § 32.

In the *Brown* case, supra, which held that one may be the "owner" of a motor vehicle within the meaning of a statute although another has the strict legal title, the court stated: "The words of a statute are to be interpreted in their natural and usual meaning unless the context indicates that a different meaning was intended. By our statute words and phrases are to be construed according to the commonly plain usage of language." It is significant that at the time *Brown* was decided the same language contained in General Statutes § 1-1 was also part of our statutory law. Rev. 1902, § 1.

It is agreed that the truck in question was the "property" of the United States and that it was "issued" by the United States to the National Guard; that the truck was under the jurisdiction of the Connecticut Air National Guard State Military Department. The term "owner" is one of general application and includes one having an interest other than the full legal and beneficial title. *Coyle* v. *Swanson,* 345 Mass. 126, 128, 185 N.E.2d 741. The word owner

is one of flexible meaning, and it varies from an absolute proprietary interest to a mere possessory right. *Animal Rescue League* v. *Assessors of Bourne,* 310 Mass. 330, 333, 37 N.E.2d 1019. It is not a technical term and, thus, is not confined to a person who has the absolute right in a chattel, but also applies to a person who has possession and control thereof. *State* v. *Mitchell,* 150 Me. 396, 397, 113 A.2d 618; *Brown* v. *New Haven Taxicab Co.,* supra; *Camp* v. *Rogers,* 44 Conn. 291, 298; see *Lowenberg* v. *Wallace,* 147 Conn. 689, 694, 166 A.2d 150. The term is broad enough to cover a tenant for years, a tenant for life, and a remainderman. 63 Am. Jur. 2d, Property, § 32.

This court has held that one may be the "owner" of a motor vehicle within the meaning of a statute although another has strict legal title; and that the word "owner" in the motor vehicle law in effect at the time, which provided that no suit could be had for injuries to a car unless the owner registered it, referred to any person having an interest in the property even under a special title. *Brown* v. *New Haven Taxicab Co.,* supra. In other cases we have held that "[t]he word 'owner' . . . includes both the legal and equitable owner and anyone having an interest in the automobile under a special title." *Kaufman* v. *Hegeman Transfer & Lighterage Terminal, Inc.,* 100 Conn. 114, 120, 123 A. 16; *Marciel* v. *Berman,* 104 Conn. 165, 168, 169, 132 A. 397. A bailor may have a general and a bailee a special ownership in the subject of the bailment. *Brown* v. *New Haven Taxicab Co.,* supra; 2 Hale, Bailments, p. 56. In *Camp* v. *Rogers,* 44 Conn. 291, 298, we held that the term "owner" as used in the statute meant the person in control of the vehicle at the time and not necessarily the actual owner; and this court

stated that "any person hiring a carriage is, for the time for which he takes it, in a certain sense its owner. He has a special property in it." In that case a man who had hired a carriage collided with another vehicle, through his own negligence, and injured the plaintiff's son. The statute in effect at the time required, in the situation that existed, the payment of treble damages to the injured party by the owner of a negligently driven vehicle. The court held that the statute intended by the word "owner" not the literal and technical owner, but the person in possession and control of the vehicle; and that the owner of a vehicle means the person in control of the vehicle either mediately or immediately and not necessarily the actual owner. The court added that this meaning was the more probable in a statute providing a remedy against one who "shall drive against another vehicle and injure its owner." It is clear that the word "owner" is not restricted to one who has the legal or rightful title, whether the possessor or not. This is especially so where the word is applied to motor vehicles. *Brown* v. *New Haven Taxicab Co.,* 92 Conn. 252, 254, 102 A. 573; *Camp* v. *Rogers,* supra; see also *Burakowski* v. *Grustas,* 134 Conn. 205, 56 A.2d 461. The United States Court of Appeals for the eighth circuit, in citing *Camp* v. *Rogers,* supra, stated that when the word owner is applied to motor vehicles its plain and reasonable meaning includes not only absolute estates but also estates that are less than absolute. *Powell* v. *Home Indemnity Co.,* 343 F.2d 856, 859, 860 (8th Cir.).

The state of Connecticut had exclusive possession and control of the vehicle at the time of the accident; it was issued to the state by the United States government and there is nothing to indicate that the

United States intended to retain possession or control of the property. This court has refused to grant immunity from the requirements of a local building code to an owner of an equity of redemption where the United States government held the purchase money mortgage, and thus the technical legal title; and the government would have been immune from local regulations. *State* v. *Stonybrook, Inc.*, 149 Conn. 492, 496–97, 181 A.2d 601. In that case the court stated (p. 496) that "a technical legal title as the government has . . . is not the equivalent of a legal title in the sense in which the term would be used were the government to be treated as the present owner or operator of the property." The court there recognized that there was nothing to indicate that the government intended to retain ownership, possession, and control of the property, or that it had in any way attempted to do so. The reason and purpose of legislation may well be more significant than technical definitions in determining the meaning of the particular word employed. *Hartford Electric Light Co.* v. *McLaughlin,* 131 Conn. 1, 5, 37 A.2d 361. The facts and nature of this case distinguish it from cases such as *Consolidated Diesel Electric Corporation* v. *Stamford,* 156 Conn. 33, 37, 38, 238 A.2d 410, which involve taxing statutes and in which the court specifically confines the interpretation of the statute to special provisions for the taxation of certain interests.

Under the circumstances, as a matter of law, it cannot be said that the statute intended that the owner of a vehicle in the context in which it is used, must necessarily preclude from liability one who did not have legal title. Where the truck is in the continual, exclusive and total possession and use of the state, the statute contemplates that liability

under the statute must be imposed on the state if the vehicle is also insured. The insurance policy provided that the words "owned automobile" shall include a truck and that "[c]overage shall apply to all such automobiles, whether licensed or not, and shall include automobiles on loan to the State of Connecticut from federal agencies." There is no dispute on this point and it is agreed that the truck in question was covered by insurance. The provisions of the policy clearly included automobiles on loan to the state of Connecticut from federal agencies and related them to an owned automobile by definition. The state recognized an "ownership" in the vehicle by virtue of its contract of insurance.[4]

The trial court had before it an affidavit that the "International 2½ ton cargo truck from the 103d Tactical Control Flight, Connecticut Air National Guard . . . is under the jurisdiction of the Connecticut Air National Guard State Military Department."

In addition, the text of the regulations of the departments of the Army and the Air Force describes the so-called "policies" in effect as follows: "3. *Policies*. a. Military property is issued to a State for the purpose of arming, equipping and training federally recognized units of the National Guard. Such property may be used for inactive duty training, full time training duty, State military duty, or active Federal military services, and as otherwise authorized in this regulation." These policies describe the broad and extremely sweeping control and use that the state maintains over the property issued to it so as to create a special and almost exclusive

---

[4] Chapter 246 of the General Statutes, Motor Vehicles, § 14-1 (33), provides: " 'Owner' means any person, firm, corporation or association holding title to a motor vehicle, or having legal right to register the same, including purchasers under conditional bills of sale."

ownership as bailee in the property during the time it is in the state's possession and care. Such a status exists unless the United States government withdraws the property under the following regulation: "b. All military property issued by the United States to the National Guard . . . may be withdrawn to meet demands of a higher priority claimant upon instructions of the Department of the Army and Department of the Air Force." We have nothing in the record which indicates what "a higher priority claimant" may be but it is clear from all the facts before us that the position and situation of the state is unique and unusual under the circumstances. It is also significant to note that the word "issue" is used throughout the regulations and that the word "owner" is not utilized. It is reasonable to suppose that the equipment remains with the state and is continually used by the state for an indefinite period of time.

In addition, it should also be noted that, generally, the individual who must sustain the loss of property in case of destruction is considered the owner and "both in common parlance and legal acceptation, [the] property is *his.*" *Hough* v. *City Fire Ins. Co.,* 29 Conn. 10, 19, 20; *Chauser* v. *Niagara Fire Ins. Co.,* 123 Conn. 413, 419, 196 A. 137; 63 Am. Jur. 2d, Property, § 32. Title 32, § 710 (c) of the United States Code, which provides for the issuance of property to the National Guard, states that if the property is damaged or destroyed through negligence the money value of the property or the damage thereto shall be charged to the state, to be paid from its funds. The state of Connecticut would, therefore, bear the risk of loss for the National Guard truck in question.

The word "owned" as used in § 52-556 of the Gen-

eral Statutes encompasses the truck issued to the state of Connecticut under the unique circumstances of this case. It is to be presumed that the legislature in enacting a law intended it to be reasonable and just, and where a law admits of a construction that will make it so, it is the duty of a court to uphold it by giving such a construction. *Camp* v. *Rogers,* 44 Conn. 291, 298. Since this holding is dispositive of the plaintiffs' appeal, it is unnecessary to discuss the other assignments of error.

There is error, the judgment is set aside and the case is remanded to be proceeded with in accordance with this opinion.

In this opinion LOISELLE and MacDONALD, Js., concurred.

HOUSE, C. J. (dissenting). I do not agree with the decision of the majority that the trial court was in error in finding that the military truck which was at all times the property of the United States government and loaned by it to the state of Connecticut was not a vehicle owned by the state and, accordingly, there was no liability on the part of the state which had waived its sovereign immunity from suit only in instances involving motor vehicles "owned and insured by the state." General Statutes § 52-556.

In interpreting the language of § 52-556 we are bound by the provisions of General Statutes § 1-1 which expressly provide that "[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language." Where an automobile belongs to A and A loans the use of it to B, that automobile is not thereupon, "according to the commonly approved usage of the language," "owned" by B. The fact

that A is the federal government and B is the state of Connecticut is immaterial. As we said in *Consolidated Diesel Electric Corporation* v. *Stamford,* 156 Conn. 33, 38, 238 A.2d 410: "Ownership is an essential incident of title and 'according to the commonly approved usage of the language' (General Statutes § 1-1), an owner is 'one that owns; one that has the legal or rightful title whether the possessor or not.' Webster, Third New International Dictionary."

The majority opinion finds support for its conclusion in the fact that the truck loaned to the state by the federal government was covered by the automobile liability insurance policy in effect at the time of the collision, holding that "[t]he state recognized an 'ownership' in the vehicle by virtue of its contract of insurance." To the contrary, I find that the provisions of the insurance policy clearly indicate recognition of the fact that the state did not own the vehicle. The policy in standard form covered vehicles "owned" by the state. If the vehicle was in fact owned by the state, no additional provision in the contract was necessary to cover its operation. Since, however, the vehicle was not owned by the state, to obtain coverage it was necessary to add a rider or special endorsement to the policy which was done by an amendment to the standard policy providing that coverage should extend not only to vehicles owned by the state but that coverage "shall include automobiles *on loan* to the State of Connecticut from federal agencies." (Emphasis added.) I fail to see how the addition of a special rider affording insurance coverage to vehicles "on loan" to the state constitutes any recognition on the part of the state that the state was the owner of the vehicle loaned to it.

I find no error in the conclusion of the trial court that the vehicle in question was not "owned" by the state of Connecticut.

In this opinion SHAPIRO, J., concurred.