ROSALIE GILL *v.* PETRAZZUOLI
BROTHERS, INC., ET AL.
(4065)

DUPONT, C. J., BORDEN and SPALLONE, Js.

Argued December 2, 1986—decision released February 24, 1987

*John J. Luckart,* for the appellants-appellees (defendants).

*Salvatore A. Maresca, Jr.,* for the appellee-appellant (plaintiff).

BORDEN, J. The defendants[1] appeal and the plaintiff cross appeals from the judgment rendered after a jury verdict in favor of the plaintiff on separate counts of conversion, fraud, a violation of the Connecticut Unfair Trade Practices Act (CUTPA); General Statutes

---

[1] The original defendant in the trial court was Petrazzuoli Brothers, Inc. The plaintiff successfully moved to add Automatic Propane Equipment, Inc., as a defendant after discovering that Petrazzuoli Brothers, Inc., had transferred property to it on which a prejudgment attachment had been placed.

§§ 42-110a through 42-110q; and fraudulent convey-ance. The defendants claim that the trial court erred (1) in denying their motion for a directed verdict,[2] which was based on the ground that the plaintiff lacked stand-ing to bring the action, (2) in failing to instruct the jury properly on ownership of a car, (3) in denying the defendants' motion to set aside the verdict as exces-sive, and (4) in improperly commenting on the evidence as it related to the fraudulent conveyance count. In her cross appeal, the plaintiff claims that the trial court erroneously concluded that the jury, not the court, awards attorney's fees under § 42-110g (d) of CUTPA and, therefore, was in error when it denied the plain-tiff's motion for such fees after the jury verdict in her favor. We find no error on the appeal. We find error on the cross appeal.

The jury could reasonably have found the following facts. James H. Butts, Jr., the plaintiff's son, purchased a 1975 Volvo automobile in 1977 for $3800 after secur-ing a credit union loan. In 1978 or 1979, Butts joined the Navy and gave the car to the plaintiff, his mother. The registration and certificate of title, however, remained in Butts' name. The plaintiff paid off $3000 of the $3800 credit union loan, exclusively used the car for almost two years and paid all taxes, insurance and maintenance on it.

In September, 1980, the plaintiff brought the car to a garage owned by the named defendant, Petrazzuoli Brothers, Inc. (Petrazzuoli), for repairs. Lawrence DeAngelis, president of Petrazzuoli, gave the plaintiff an oral estimate of $400 to $450 for the repair work. A week or two later, DeAngelis called the plaintiff and informed her that her car was repaired and that the bill totaled $991.02. The plaintiff could not pay the

---

[2] Although at trial the motion was erroneously characterized as a motion to dismiss, both the defendant and the plaintiff refer to it, in their briefs, as a motion for a directed verdict, and we will treat it as such.

entire bill at that time. DeAngelis agreed to hold the automobile until the repair bill was paid, and to accept periodic payments. The plaintiff made a payment of $200 on October 4, 1980, and $100 a week or two later. On October 23, 1980, she received a notice from DeAngelis stating that she now had a bill for storage in the amount of $300, and that if the entire $991.02 bill were not paid within five days, the automobile would be sold pursuant to General Statutes § 14-150.[3] Prior to this notice, there had been no discussion of storage fees. The plaintiff attempted to contact DeAngelis on numerous occasions but was unsuccessful. Petrazzuoli sold the car for $1000 on October 29, 1980. The plaintiff nonetheless continued to make payments on the credit union loan for another two years until it was paid off. Soon after selling the plaintiff's car, Petrazzuoli transferred its real estate to the defendant, Automatic Propane Equipment, Inc., for no consideration. DeAngelis was president of both corporations.

The jury returned a verdict in the plaintiff's favor against both defendants on all four counts of the complaint. The jury awarded the plaintiff $12,816 in compensatory damages, and $3845 in punitive damages.

## THE DEFENDANTS' APPEAL

The defendants' first and second claims of error are flip sides of the same coin and will be treated together. The defendants argue initially that the plaintiff was not the "owner" of the car within the meaning of title 14 of the General Statutes and, therefore, was not injured

---

[3] General Statutes § 14-150 applies to abandoned or unregistered motor vehicles and motor vehicles which are a menace to traffic. Subsection (e) of the statute permits an owner or keeper of a garage who has stored such a motor vehicle, discovered and taken into custody by an inspector of the motor vehicle department or a local or state police officer, to sell it under certain circumstances. The defendant was mistaken in believing that this statute granted him authority to sell the plaintiff's car after she had brought it to him for repairs.

by the defendants' conduct. Consequently, they claim, she lacked standing to bring the action, and the defendants' motion for a directed verdict on this ground should have been granted. Concomitantly, the defendants claim that the trial court erred in its instructions to the jury on the concept of ownership of the car. Additionally, they claim error in the trial court's failure to charge, as requested, on the statutorily prescribed method of transferring ownership. The success of these claims depends upon our acceptance of the defendants' definition of "owner."

The defendants seek to persuade us that definitions found in title 14 of the General Statutes are controlling in this action. General Statutes § 14-1 (37) states that an owner is "any person holding title to a motor vehicle, or having the legal right to register the same . . . ." That definition applies to chapter 246 of the General Statutes, which covers such subjects as the department of motor vehicles, registration of motor vehicles, dealers' and repairers' licenses, required mechanical equipment standards. General Statutes § 14-165 (f) defines an owner, in pertinent part, as "a person . . . having the property in or title to a vehicle." That definition applies to chapter 247 of the General Statutes, which is the Uniform Motor Vehicle Certificate of Title and Anti-Theft Act. Under these definitions, the defendants argue, a person is an owner of a motor vehicle only if he holds title to it or has the legal right to register it. Since the plaintiff's son was the title holder and registered owner of the car, the defendants' argue, he was the owner for purposes of this case, and the plaintiff lacked standing to sue for the loss of the car. We disagree.

The definitions in title 14 do not control this action. Those definitions apply to the statutory subjects covered by chapters 246 and 247 of the General Stat-

utes. They do not apply to the private causes of action involved in this case, to which a more expansive definition of "owner" applies.

In *Hope* v. *Cavallo,* 163 Conn. 576, 316 A.2d 407 (1972), our Supreme Court was faced with a similar issue, namely, whether the plaintiff could sue the state of Connecticut for negligent operation of a motor vehicle under General Statutes § 52-556. That statute authorized a cause of action for injuries caused by motor vehicles owned by the state. The United States government held title to the truck involved in the accident. The truck had been "issued" to the state. The state claimed that since it was not the owner of the truck, the plaintiff could not sue it under the statute.

The Supreme Court held otherwise and stated, "[t]he term 'owner' is one of general application and includes one having an interest other than the full legal and beneficial title. . . . The word owner is one of flexible meaning, and it varies from an absolute proprietary interest to a mere possessory right. . . . It is not a technical term and, thus, is not confined to a person who has the absolute right in a chattel, but also applies to a person who has possession and control thereof." (Citations omitted.) Id., 580–81; see also *Smith* v. *Planning & Zoning Board,* 3 Conn. App. 550, 553, 490 A.2d 539 (1985); *Lazoff* v. *Padgett,* 2 Conn. App. 246, 249, 477 A.2d 155, cert. denied, 194 Conn. 806, 482 A.2d 711 (1984). "In addition, it should also be noted that, generally, the individual who must sustain the loss of property in case of destruction is considered the owner and 'both in common parlance and legal acceptation, [the] property is *his.*' " (Emphasis in original.) *Hope* v. *Cavallo,* supra, 585. Applying this definition to the facts of the case, the Supreme Court held that the state could be an owner for purposes of being sued under General Statutes § 52-556 even though the United States government held title to the truck, because the

state had exclusive possession and control of the truck at the time of the accident and insured it. Id., 582–86.

Similarly, we conclude that despite the fact that the plaintiff was not the registered owner of the car, she was nonetheless the owner within the meaning of *Hope* v. *Cavallo,* supra. She had exclusive possession and control of the car. She used it for over two years after her son went into the Navy. She contributed substantially to the purchase price, paid the taxes and maintenance costs on the motor vehicle, and insured it. Additionally, she was treated as the owner of the car by Petrazzuoli. The jury could reasonably have concluded that the plaintiff was the owner of the car, even though it was registered in her son's name. See also *Brockett* v. *Jensen,* 154 Conn. 328, 336–37, 225 A.2d 190 (1966) (car registered in mother's name was only prima facie evidence of ownership and it remained an issue of fact as to whether son was actual owner); *Burakowski* v. *Grustas,* 134 Conn. 205, 209, 56 A.2d 461 (1947) (registration "is merely evidence of ownership, to be considered in connection with other evidence in the case upon that issue").

Because of our conclusion that an owner of an automobile may be a person other than the title or registration holder, we hold that the plaintiff had the requisite standing, as an owner, to bring an action for the loss of the car. The trial court charged the jury on the concept of ownership in accordance with these principles. The defendants' claim of improper jury instructions must, therefore, also fail.

The defendants next claim that the trial court erred in failing to set aside the verdict as excessive. The defendants' entire argument on this issue in their brief consists of the following sentence: "The verdict awarding $12,816.00 compensatory damages and $3,845.00, punitive damages was clearly excessive since the vehi-

cle was purchased for $3,800.00 in 1977, three years prior to the incident in question." There is no citation to legal authority, and no reference to the other evidence of damages which is in the record, namely, that the car was worth $5000 when it was sold, that the plaintiff paid $3000 of the credit union loan after the sale, and that she incurred substantial transportation costs for nearly two years. The defendants failed to present this issue with any modicum of compliance with the rules of practice. See Practice Book § 4065 (formerly § 3060F). The defendants' complete failure to research the issue or formulate any legal argument precludes meaningful appellate review; see *In re Juvenile Appeal (85-3),* 3 Conn. 194, 197, 485 A.2d 1369 (1985); and we therefore decline to address this claim of error.

The defendants' final claim of error is that the trial court, during its charge to the jury on the fraudulent conveyance count, improperly commented on the evidence with the effect of directing a verdict on a controverted fact. While the defendants took exception to this charge, this claim was not presented to the court during the hearing on their motion to set aside the verdict. Thus, a review of the claim is limited to determining whether there was plain error. *Kemp* v. *Ellington Purchasing Corporation,* 9 Conn. App. 400, 406, 519 A.2d 95 (1986). Upon review of the trial court's jury charge, we do not find that these instructions amounted to plain error.

## THE PLAINTIFF'S CROSS APPEAL

The plaintiff claims, on her cross appeal, that the trial court erred in denying her motion for attorney's fees and costs under CUTPA after the jury had returned a verdict in her favor. The plaintiff claims that General Statutes § 42-110g (d) authorizes a bifurcated proceeding whereby the trial court, not the jury, awards

attorney's fees and costs after the issue of liability has been resolved.[4] This is a matter of first impression. We agree with the plaintiff.

" 'The fundamental objective of statutory construction is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern this intent, we look to the words of the statute itself . . . to the legislative history and circumstances surrounding the enactment of the statute . . . to legislative practice and policy . . . and to judicial construction.' *State* v. *Kozlowski,* 199 Conn. 667, 673–74, 509 A.2d 20 (1986) . . . ." *Board of Education* v. *Board of Labor Relations,* 201 Conn. 685, 690, 519 A.2d 41 (1986). On the basis of the statutory language, the legislative history and the policy underlying § 42-110g (d) of CUTPA, we conclude that the legislative intent was that, even in a jury case, the court award attorney's fees and costs.

First we look to the words of the statute. General Statutes § 42-110g (d) provides, in relevant part: "In any action brought by a person under this section, *the*

---

[4] We are without benefit of a decision setting forth the trial court's reasoning in denying the motion for attorney's fees. It was the responsibility of the cross appellant to provide this court with an adequate record. The plaintiff should have moved for an articulation of the legal basis of the trial court's decision; *Thiel Realty Corporation* v. *Culligan Water Conditioning Co.,* 9 Conn. App. 191, 193, 517 A.2d 1052 (1986); so that this court could effectively review its validity. While normally a failure to perfect the record may preclude appellate review, under the state of the record in this case we are able to discern the basis of the trial court's decision. The plaintiff presented no evidence of attorney's fees to the jury. Thus, there was no basis on which the court could have submitted that claim to the jury. In light of various colloquies between the plaintiff's attorney and the court, it is apparent that the trial court denied the plaintiff's postverdict motion, not because it was exercising *its* discretion as to whether attorney's fees should be awarded, but because of its belief that it was the jury's function to award such fees. Thus, the issue placed squarely before us is whether the trial court erred in denying the plaintiff's motion for attorney's fees by construing § 42-110g (d) of CUTPA to require that the jury, rather than the court, award attorney's fees and costs.

*court may award,* to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery." (Emphasis added.) We cannot assume that the statutory language which states that *the court* may award attorney's fees is meaningless or superfluous. *LaCroix* v. *Board of Education,* 2 Conn. App. 36, 41, 475 A.2d 1110 (1984). The legislature, in enacting statutes permitting awards of attorney's fees, has chosen to include the language which authorizes *the court* to make the award with respect to some causes of action; see, e.g., General Statutes § 31-72 (actions to collect wage claims); General Statutes § 36-449 (violations of the Home Mortgage Disclosure Act); General Statutes § 46b-62 (actions for dissolution of marriage, legal separation and annulment); General Statutes § 52-484 (action in interpleader); and has chosen not to include the language with respect to other causes of action. See, e.g., General Statutes § 35-35 (antitrust actions); General Statutes § 36-498 (a) (Uniform Securities Act violations); General Statutes § 42-133ee (Franchise Act violations); General Statutes § 47a-13(b) (actions against landlords for failure to provide essential services). We cannot assume, given the legislature's enactment of numerous statutes authorizing attorney's fees, that it acted without purpose in placing such an award, under CUTPA, in the hands of "the court."

The legislative history surrounding the enactment of CUTPA and the legislative policy to be furthered by it also lend support to the conclusion that it is the trial court, and not the jury, which awards attorney's fees under CUTPA. CUTPA was first enacted in 1973. It was originally intended to be the state's counterpart to the Federal Trade Commission Act. R. Langer & D. Ormstedt, "The Connecticut Unfair Trade Practices Act," 54 Conn. B. J. 388, 389 (1980). The purpose of

the statute was to provide a meaningful avenue of redress for consumers who had been victims of unfair or deceptive trade practices by providing for private as well as public enforcement. Id., 389–90. Subsequently, in order to encourage private litigants to bring actions under CUTPA certain amendments to the act were made. Of most relevance was the amendment in 1976 to the section of the act which covered attorney's fees. Previously, the 1973 act had authorized the court to award attorney's fees to either the plaintiff or the defendant. The 1976 amendment provided that the court could award costs and reasonable attorney's fees to the plaintiff only.

During the legislative debate, Representative Alan H. Nevas remarked, albeit in opposition to the amendment: "When the initial legislation was enacted, the language provided that if there was litigation, *the court, at the end of that litigation, could make an award of costs and attorney's fees* to either party, depending on the discretion of the court and in its judgment as to which party should be entitled to such an award. Now what it does is to make—to take away from *the court* that discretion and to say that that award can only be made to the plaintiff . . . . " (Emphasis added.) 19 H.R. Proc., Pt. 6, 1976 Sess., p. 2189. Senator Louis S. Ciccarello commented: "[B]oth the Department of Consumer Protection and the Attorney General's office and private attorneys are all of the opinion that in order to protect consumers of the state that plaintiff's fees are extremely necessary. The reason for, there is a lot of hesitancy in bringing a lawsuit of this nature and in order to pursue this sort of private attorney general method, you have to have plaintiff's attorney's fees. I think it's fair and I think it should also be pointed out that *reasonable attorney's fees are granted only upon discretion of the court,* so therefore, a plaintiff

may not be able to receive any fees whatsoever."
(Emphasis added.) 19 S. Proc., Pt. 6, 1976 Sess., p.
2278.

These comments strongly suggest that the legislative intent behind the section awarding attorney's fees, both in the original act and under the 1976 amendment, was for the court to make the award. There is absolutely no indication that such an award was to be placed in the hands of the jury. This is further supported by statements which analogize this provision to provisions in the federal antitrust statute. See 19 H.R. Proc., Pt. 6, 1976 Sess., p. 2192, remarks of Representative Raymond C. Ferrari; 19 S. Proc., Pt. 6, 1976 Sess., p. 2276, remarks of Senator Ciccarello. Under the provisions of the federal antitrust act; 15 U.S.C. § 15; the amount of the award for attorney's fees is fixed by the trial court. *Perkins* v. *Standard Oil Co.*, 399 U.S. 222, 223, 90 S. Ct. 1989, 26 L. Ed. 2d 534 (1970); 54 Am. Jur. 2d, Monopolies § 365. Thus, the legislative history lends strong support to the conclusion that the trial court awards attorney's fees under CUTPA.

The policy behind CUTPA, namely, to encourage litigants to act as private attorneys general and to bring actions for unfair or deceptive trade practices, is furthered by our conclusion. Integral to effecting this policy, and reflected in the 1976 amendment, is the desire to encourage attorneys to accept and litigate CUTPA cases. CUTPA cases, however, may entail long hours with little likelihood of an award that will cover reasonable expenses. For this reason, General Statutes § 42-110g (d) offers an attorney who accepts a CUTPA case the prospect of recovering reasonable fees and costs. Such fees and costs, however, often have not been exhausted by the time the jury returns its verdict. The parties may file posttrial motions or be forced to respond to them. A successful plaintiff may be required to defend against a defendant's appeal, as in

the present case. Thus, it is unlikely that the legislature intended the jury to award attorney's fees as part of its verdict, since this would thwart full recovery for the services rendered. See *Conservation Commission* v. *Price,* 5 Conn. App. 70, 73, 496 A.2d 982 (1985). This interpretation is supported by Representative Nevas' remark that attorney's fees would be awarded at the end of litigation. 19 H.R. Proc., Pt. 6, 1976 Sess., p. 2189.

Additionally, we point out that a jury may not be suited to undertaking an award of attorney's fees in a CUTPA case. General Statutes § 42-110g (d) permits the award of attorney's fees without reference to the actual recovery by the plaintiff. A successful plaintiff's monetary recovery may be only nominal, more in the nature of a vindication of public rights, whereas a great deal of time may have been logged by counsel in managing the litigation. A jury might find it anomalous to set such potentially disproportionate awards between the successful plaintiff and his attorney. To foreclose the possibility of prejudice entering the decision-making process, the award of attorney's fees has been placed in the hands of the court.

Finally, we note that the recent Supreme Court case of *Russell* v. *Dean Witter Reynolds, Inc.,* 200 Conn. 172, 510 A.2d 972 (1986), lends support to our conclusion. In that case, the trial court awarded attorney's fees under General Statutes § 36-498 (a) of the Connecticut Uniform Securities Act (CUSA) after a jury verdict in the plaintiff's favor. The issue of whether the court or the jury was authorized to make the award was not litigated. Nevertheless, the court recognized the role of the court in this regard: "A plaintiff may recover 'reasonable attorney's fees' under § 36-498 only if he prevails on his § 36-498 claim. The magnitude of the amount awarded to a victorious party *rests within the sound discretion of the trial court.*" (Emphasis

added.) Id.,194–95. General Statutes § 36-498 (a), unlike General Statutes § 42-110g (d) of CUTPA, does not contain statutory language authorizing "the court" to award attorney's fees. The provision for recovery of attorney's fees under CUSA, however, serves the identical purpose of "encourag[ing] the enforcement of CUSA by victims of improper securities transactions who might not otherwise be able to afford to do so. . . . It reflects a legislative recognition that suits under CUSA are often long, complex, and prohibitively expensive for individual investors." Id., 195–96. We therefore find additional support for our conclusion that the court awards attorney's fees under CUTPA from our Supreme Court's recognition of this division under CUSA, an act which similarly seeks to encourage private attorney general litigation.

We hold, on the basis of the statutory language and legislative history of General Statutes § 42-110g (d), and the policy underlying CUTPA, that the court rather than the jury determines an award of attorney's fees. Therefore, the trial court erred in denying the plaintiff's motion for attorney's fees after the issue of liability had been resolved in her favor.[5]

There is no error on the defendants' appeal. There is error on the plaintiff's cross appeal, the judgment is set aside as it relates to the refusal to award attorney's fees and the case is remanded for a hearing on reasonable attorney's fees and costs in accordance with this opinion.

In this opinion the other judges concurred.

---

[5] We point out that the plaintiff remains free on remand to present evidence on reasonable litigation costs incurred in defending this appeal. *Russell v. Dean Witter Reynolds, Inc.,* 200 Conn. 172, 196 n.20, 510 A.2d 972 (1986). See *Conservation Commission v. Price,* 5 Conn. App. 70, 73, 496 A.2d 982 (1985).