[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On October 12, 1995, the plaintiff, Edward H. Joyce, filed suit against the defendants Donald Gilman and TeLog Corporation (TeLog). The revised complaint, filed January 23, 1996, alleges five counts. The first count alleges conversion of stock and is directed toward Gilman. The second count alleges fraud and is directed toward Gilman and TeLog. The third count alleges conversion of funds and equipment and is directed toward Gilman. The fourth count alleges conversion of funds and equipment and is directed toward TeLog. The fifth count alleges breach of trust and is directed toward Gilman.
Specifically, the revised complaint alleges that Joyce and Gilman entered into an agreement to form a corporation during the first quarter of 1993. (Count one, ¶¶ 4-5.) Joyce alleges that he was to contribute fifty-thousand dollars ($50,000), conduct TeLog's financial business and receive fifty-one percent of TeLog's stock, (the stock), and Gilman was to take the title of president, run the daily operations and receive forty-nine percent of the stock. (Count one, ¶ 5.) At the same time, Gilman suggested and Joyce agreed that instead of incorporating a new company that the two should change the name of Quinebaug Valley Communications, an entity that Gilman had already incorporated but which had not yet issued stock, to TeLog. (Count one, ¶ 6.) Gilman told Joyce that his attorney would execute the terms of this agreement. (Count one, ¶ 6.) From April 19, 1993, to June 16, 1993, Joyce allegedly contributed $50,000 to TeLog. (Count one, ¶ 8.) On July 14, 1993, Joyce and Gilman allegedly realized that TeLog needed more start-up money, and allegedly agreed that Joyce would contribute up to two hundred and fifty-thousand dollars ($250,000) to TeLog in funds and materials, and, in return, Gilman would assign his forty-one percent of the stock to Joyce, would remain president and would continue to receive a salary. (Count one, ¶ 9.) After June 1993, Joyce allegedly acted as the sole owner of TeLog's stock. (Count one, ¶ 11.) In the Spring of 1995 Joyce saw documents indicating that Gilman was the registered owner of one-hundred percent of TeLog's stock, and at this time, Joyce demanded that his ownership interest be returned to him. (Count one, ¶ 12.) Gilman allegedly refused and told Joyce that he intended to "remain owner of the corporation." Id. On August 14, 1995, Gilman CT Page 847 caused TeLog to sever its relationship with Joyce. Id. Joyce further alleges that Gilman's actions constitute conversion of the stock that Gilman had assigned to Joyce for valuable consideration. (Count one, ¶ 13.) The revised complaint incorporates the first count into the second count, and the revised complaint incorporates the second count into the third and fourth counts. Joyce further alleges that Gilman fraudulently induced him to contribute approximately two hundred fifty-seven thousand seven hundred and forty-eight dollars ($257,748) to TeLog. (Count two, ¶ 14.) Joyce also alleges that Gilman and TeLog, through their actions, converted the $257,748 that rightfully belonged to Joyce. (Count three, ¶ 20; count four, ¶ 20.) Finally, Joyce alleges that he is the rightful owner of one-hundred percent of TeLog's stock and that Gilman holds the stock as a constructive trustee for Joyce. (Count five, ¶¶ 20-21.)
On February 7, 1996, the defendants filed a motion to strike counts one, three, and four of the plaintiff's revised complaint. The motion was accompanied by a memorandum in support as required by Practice Book § 155. On March 27, 1996, Joyce filed an objection to the motion to strike accompanied by a supporting memorandum.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.) Waters v. Autuori, 236 Conn. 820, 825, 676 A.2d 357
(1996).
Count One
The Supreme Court has defined "conversion as [a]n unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights. . . . It is some unauthorized act which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and exercise of the powers of the owner to his harm. The essence of the wrong is that the property rights of the plaintiff have been dealt with in a manner adverse to him, inconsistent with this right of dominion and to his harm. . . . `An action of conversion is a suit for damages by the owner of a CT Page 848 chattel or by one entitled to the immediate possession of the chattel, against one who has wrongfully appropriated the chattel . . . in derogation of the rights of the rightful owner or possessor.'" (Internal citations omitted.) Aetna Life Casualty Co. v. Union Trust Co., 230 Conn. 779, 790-91,646 A.2d 799 (1994), quoting D. Wright J. Fitzgerald, Connecticut Law ofTorts (2d Ed. 1968) § 25.
The defendants move to count strike one on the ground that it is legally insufficient. In their memorandum of law, the defendants assert that only legal title holders are owners who can maintain an action of conversion. The defendants argue that the amended complaint merely alleges that Joyce has equitable ownership interest in the stock, and therefore, fails to state a cause of action for conversion. In opposition Joyce argues that the defendants inaccurately state the law in Connecticut.
Although the defendants offer numerous cases from other jurisdictions to support the assertion that only a legal title holder or legal owner can bring a claim for conversion, but this assertion is not supported by Connecticut law. In fact, Connecticut courts have adopted a liberal definition of ownership where conversion is at issue. For example, in Gill v. PetrazzuoliBothers, Inc., 10 Conn. App. 22, 521 A.2d 212 (1987), the plaintiff's son purchased an automobile and then joined the Navy. He gave the automobile to the plaintiff but he kept the title and registration in his own name even though the plaintiff paid the remainder of the loan, insured the vehicle and used the automobile exclusively. Id., 24. The plaintiff took the automobile to the defendant's garage for repairs. When the repairs were complete the plaintiff could not pay the entire bill, and the defendant agreed to hold the automobile until the bill was paid. Id., 24-25. Despite the plaintiff's payments toward the repair bill, the defendant sold the automobile. Id. The plaintiff brought, inter alia, a claim of conversion against the defendant. Id., 23. A jury found in favor of the plaintiff and the defendant appealed arguing that the plaintiff lacked standing to bring a conversion claim because she was not the legal owner of the automobile. Id., 26. The Appellate Court held that "an owner . . . may be a person other than the title or registration holder." Id., 28.
In Gill v. Petrazzuoli Brothers, Inc. the Appellate Court relied on the definition of ownership that had been crafted years before in Hope v. Cavallo, 163 Conn. 576, 316 A.2d 407 (1972). CT Page 849 "[T]he term owner is one of general application and includes one having an interest other than full legal and beneficial title. . . . The word owner is one of flexible meaning, and it varies from an absolute proprietary interest to a mere possessory right. . . . It is not a technical term and thus, is not confined to a person who has an absolute right in chattel, but also applies to a person who has possession and control thereof." Hopev. Cavallo, supra 163 Conn. 580-81. In Gill v. PetrazzuoliBrothers. Inc., the court concluded that because the plaintiff had possession and control of the automobile that she was its owner for the purposes of bringing a conversion suit, even though the car was registered in her son's name. Gill v. PetrazzuoliBrothers, Inc., supra 10 Conn. App. 28.
Both Hope and Gill demonstrate that one need not have full legal title to be considered an owner for purposes of bringing a cause of action for conversion. Accordingly, the defendants' first argument is without merit.
The defendants further contend that Connecticut law recognizes an exception to the rule, that only legal owners can bring an action for conversion, where there is an actual right to immediate possession of the property. The defendants argue that Joyce does not qualify for this exception because the first count of the amended complaint fails to allege a right to immediate possession. In response, Joyce argues that the first count of the amended complaint alleges a right to immediate possession of the stock. To the extent that the defendants argue this rule is an exception, that the defendants have misstated the law. However, the defendants have accurately stated that a person must allege a right to immediate possession in order to state a cause of action for conversion. Accordingly, the court should address whether the amended complaint alleges a right to immediate possession.
To sufficiently allege a cause of action for conversion, a plaintiff must allege that (1) the property belonged to the plaintiff, (2) that the defendant deprived the plaintiff of its property for an indefinite period of time, (3) that the defendant's conduct was unauthorized, and (4) that the defendant's conduct harmed the plaintiff. Discover Leasing, Inc.v. Murphy, 33 Conn. App. 303, 309, 635 A.2d 843 (1993). "A cause of action arising from the unlawful exercise of dominion over property, cannot be properly stated without a direct allegation of the material facts which constitute the unlawful act. . . . In these counts no facts are alleged which show, or tend to show, CT Page 850 that the plaintiff is entitled to the immediate possession of [the property]." Healey v. Flammia, 96 Conn. 233, 235,113 A.2d 449 (1921). But see, Equipment Distributors, Inc. v. Charter OakBank Trust Co., 34 Conn. Sup. 606, 610, 379 A.2d 682 (1977) (where the court inferred an allegation of immediate possession from the totality of the allegations).
In the present case, the amended complaint alleges that Joyce and Gilman entered into an oral contract where Joyce would supply cash and supplies to TeLog in return for one-hundred percent ownership of the corporation. (Count one, ¶¶ 5, 8-10.) Gilman allegedly agreed to this arrangement and allegedly stated that he would ask his lawyer to do all that was necessary to carry out the terms of the agreement. (Count one, ¶¶ 5-6, 9.) Joyce allegedly performed his part of the agreement. (Count one, ¶ 8-9.) Subsequent to the agreement Joyce allegedly possessed one-hundred percent of the ownership interest in TeLog and controlled TeLog. (Count one, ¶¶ 9, 11.) Joyce alleged that he determined the salaries, raises and benefits of all employees, including Gilman, and which employees would drive company vehicles. (Count one, ¶ 11.) Joyce alleges that he had an alarm installed at TeLog that would notify him in his home in case of emergency. Id. In addition, Joyce alleges that Gilman assigned TeLog's stock to himself, his contractual agreement with Joyce to the contrary, and that Joyce has refused to return the stock despite Joyce's request that he do so. (Count one, ¶ 12.)
The amended complaint alleges sufficient facts for the court to infer that Joyce had an immediate right to TeLog's stock. For instance, Joyce unequivocally alleges that he contributed $50,000 and $250,748, on two separate occasions, to TeLog in exchange for one-hundred percent of its stock. When Joyce discovered that the stock was issued to Gilman he immediately demanded that the stock be returned to him. (Count one, ¶¶ 5, 8-11.) As in Gill v.Petrazzuoli Brothers. Inc., supra, that Joyce has set forth facts demonstrating he allegedly purchased and controlled TeLog. Accordingly, Joyce has sufficiently alleged facts demonstrating that he had an ownership interest in the stock. Further, these facts, when viewed in the light most favorable to the plaintiff, sufficiently allege that Joyce has alleged a right to immediate possession of the ownership interest and the stock that represents that interest. See Ayres v. French, 41 Conn. 142,149-52 (1874) (the court held that an action for conversion lies where one refuses to convey stock to one who has purchased it.) CT Page 851
The defendants further argue that the plaintiff must establish that he is not only the owner but that he has a superior right of possession to the stocks in order to prevail at trial. In Bergen v. Bergen, 177 Conn. 53, 57, 411 A.2d 22 (1979), the court emphasized that absent any proof of ownership or superior right of possession an action for conversion will not lie. As stated above the amended complaint alleges sufficient facts that demonstrate a right of ownership and possession. However, "[i]t is of no moment that the plaintiff may not be able to prove its allegations at trial or that the defendant might prove facts which operate to bar the plaintiff's claim. The sole inquiry at this stage of the pleading is whether the plaintiff's allegations, if proved, would state a basis for standing." Doylev. A P Realty Corporation, 36 Conn. Sup. 126, 127, 414 A.2d 204
(1980). This argument is unpersuasive and cannot serve as a basis to strike the first count.
The allegations in the first count, viewed in the light most favorable to the plaintiff, set forth sufficient facts that state a cause of action for conversion. Accordingly, the defendant's motion to strike count one is denied.
Count Three and Four
The defendants move to counts strike three and four on the ground that each is legally insufficient. In their memorandum in support, the defendants argue that counts three and four of the plaintiff's revised complaint are insufficient because the plaintiff relinquished his ownership and possessory rights to the cash and the property that he contributed to TeLog, and thus, Joyce has no ownership rights in the property or a right to immediate possession of the contributed property. In response the plaintiff argues that he never abandoned ownership interest in the funds and property contributed to TeLog because he believed that he was contributing the funds and property to an entity that was, for all intents and purposes, owned by him.
Whether property is abandoned is a question of intent, and intent is a question of fact. Sharkiewicz v. Lepone,139 Conn. 706, 707, 96 A.2d 796 (1953). ("Abandonment in its general sense is the intentional relinquishment of a known right. . . . To constitute an abandonment there must be an intention to abandon or relinquish accompanied by some act or omission to act by which such an intention is manifested." (Citation omitted; internal quotation marks omitted.) Id.). CT Page 852
"Where the legal grounds for [a motion to strike] are dependent upon underlying facts not alleged in the plaintiff's pleadings, the defendant must await the evidence which may be adduced at trial, and the motion should be denied." LiliedahlBros., Inc. v. Grigsby, 215 Conn. 345, 348, 576 A.2d 149 (1990).
The amended complaint does not contain any allegation that Joyce abandoned his alleged ownership rights in the equipment or money contributed to TeLog. In arguing that Joyce has abandoned the funds and the equipment, the defendants' are urging the court to consider facts outside of the amended complaint. A consideration of such facts is improper on a motion to strike.Liljedahl Bros., Inc. v. Grigsby, supra. Therefore the defendants' motion to strike counts four and three is denied.
For the reasons stated above the defendants' motion to strike is denied.
Howard F. Zoarski Judge Trial Referee