JOHN L. CHAN ET AL., APPELLEES, V. CITY OF SOUTH OMAHA, ET AL., APPELLANTS.

FILED NOVEMBER 19, 1909. NO. 15,809.

1. **Cities: REPAVEMENT: REMONSTRANCE: "OWNER."** An executor or an administrator in the possession of and exercising complete control over the real property of his decedent, if his authority to remonstrate is not challenged by the heirs or devisees of said decedent, is an owner of such real estate within the meaning of the statute authorizing the owners of 50 per cent. of the foot frontage of real estate subject to special assessments within an improvement district by remonstrating to deprive the city council of power to repave the streets within said district at the expense of the real estate situated therein.

2. ———: ———: ———: ———. A guardian in like control of the real estate of his ward, is also an owner within the meaning of said statute. So, also, the surviving spouse of the owner of a homestead and a tenant in common are owners.

3. ———: ———: ———: SIGNATURE OF CORPORATION. The name of a corporate owner of real estate subject to such an assessment may lawfully be affixed by the president thereof to such a remonstrance.

4. ———: ———: ———: Signing by Initial. Names signed by initial which identify the remonstrant by reference to the property owned by the signer should also be received, where objection is not made by the council to the fact that the first name is not signed in full.

Appeal from the district court for Douglas county: Howard Kennedy, Judge. *Affirmed.*

*W. C. Lambert* and *S. L. Winters,* for appellants.

*A. H. Murdock* and *E. T. Farnsworth, contra.*

Root, J.

This is an action to cancel special assessments levied upon plaintiffs' real estate in South Omaha for the purpose of defraying three-fifths of the expense incurred in repaving a part of Twenty-fourth street in said city. Plaintiffs prevailed, and defendants appeal.

The tax was assessed in 1905. In 1903 the legislature by chapter 17, laws 1903, authorized the city of South Omaha to issue bonds to pay for improving street intersections and such parts of streets and alleys as are not subject to special assessments but are within improvement districts. In 1905 the city charter was so amended that streets might be repaved upon the city's initiative, and provided: "No repavement, as herein provided, shall be ordered or made if a remonstrance against the making of the same is filed with the city clerk during the time the ordinance declaring the necessity therefor is pending, which remonstrance shall be signed by the owners of fifty per cent. at least of the foot frontage on the street, or the part thereof to be repaved as the case may be." Laws 1905, ch. 20, sec. 110, subd. XVI. A remonstrance purporting to represent more than 50 per cent. of the foot frontage in said district was filed July 10, 1905, and submitted by the council to the city engineer and the city attorney. The record does not show that the remonstrants were given a hearing on their objections, nor that they

were afforded any opportunity to establish their claim of ownership to the tracts and lots of land represented by them. The city attorney and the city engineer, on the third day after the objections were filed, reported to the council that a frontage of only 5,180 feet was represented by the remonstrance, but in nowise indicated the names rejected. The remonstrance does not seem to have been formally overruled, but from thenceforward was ignored. The statute does not provide that a hearing shall be given the remonstrants if their right to remonstrate or the .sufficiency of their number is questioned, so that, whenever the sufficiency of the remonstrance is questioned in court, the fact should be determined without reference to the action of the city officials. The district court found that the owners of 50 per cent. of the foot frontage in said district had remonstrated against the repavement of the street, and that the city council was without jurisdiction to levy the assessments in suit.

1. It appears from the stipulations in the bill of exceptions that the total foot frontage of the district repaved is 2,121.3 feet, and that the United States government is the owner of 130 feet thereof. The 130 feet should be deducted from the entire frontage, leaving 1,991.3 feet. *Armstrong v. Ogden City*, 12 Utah, 476; *Herman v. City of Omaha*, 75 Neb. 489. Defendants admit that all of the signatures to the remonstrance are genuine, and that many of the remonstrants owned the real estate described opposite their names. The issue, therefore, is whether in July, 1905, certain signers of the remonstrance owned lots or parts of lots fronting on twenty-fourth street in said paving district.

2. It seems that John J. Joslin died prior to 1905, the owner of certain lots aggregating 630 feet frontage in said district. By his last will and testament, which has .been duly probated in Douglas county, the testator nominated Suviah Joslin and Charles S. Joslin as executrix and executor thereof, and authorized them to sell all of his real estate not specifically devised. He made specific

devises of real estate other than the South Omaha property, created various trusts, authorized his executors to complete improvements on his South Omaha property, and devised the residue of his estate in equal shares to said Suviah Joslin, Charles S. Joslin and one other person. The estate had not been settled in 1905, but all of its assets were in the possession of the executrix and executor, who signed the remonstrance. The remonstrants were owners within the meaning of the statute, *supra*. *Portsmouth Savings Bank v. City of Omaha*, 67 Neb. 50. Complaint is made that the executrix signs as to certain lots and the executor for the remaining tracts owned by the estate and included in the district, and it is argued that each representative of the estate should have signed the protest as to all of said lots. While it may be necessary for the representatives to act jointly to convey the real estate, a remonstrance signed by either representative for the purpose of protecting the estate is valid.

The respective administrators of the Akofer, Crowell and Eggers estates and the executrix of the last will and testament of William Schmeling, deceased, signed said remonstrance. In each instance the decedent at the time of his demise owned real estate fronting on Twenty-fourth street within said district. In each case the remonstrator was in possession of and managing the estate of his or her decedent. Mrs. Schmeling owned one-third of the real estate represented by her remonstrance, and Mrs. Eggers, Mrs. Akofer and Mrs. Schmeling, respectively, occupied as a home for herself and children the lots represented by her remonstrance, and had so occupied the property preceding the death of her decedent. Mrs. Eggers was also guardian for her infant children. No one disputed the right of any one of said remonstrants to represent the property of the estate, and, under the circumstances, the remonstrant was an owner within the meaning of the statute. The word owner has no technical meaning, but its definition will contract or expand according to the subject matter to which it is applied. A

moment's reflection will recall that in the criminal law a mere bailee may be the owner of personal property, that the same rule holds good in replevin and trover, and that in condemnation proceedings all persons having any interest, estate or easement by way of lien, charge or incumbrance in the property to be taken is an owner thereof. Many examples may be found by an examination of 6 Words and Phrases, p. 5135 *et seq.* In *Allen v. City of Portland,* 35 Or. 420, and *Los Angeles Lighting Co. v. City of Los Angeles,* 106 Cal. 156, it is held that an executor, a guardian or a tenant in common is the owner of land within the meaning of the statute granting owners power identical with that conferred by the Nebraska statute, *supra.* See, also, *Morey v. City of Duluth,* 75 Minn. 221. It may be that, if the heir, devisee or other person entitled to the fee of the lots had denied the right of the remonstrant to represent the estate, the city council would have been justified in rejecting the signatures. The record affirmatively discloses that the authority of the remonstrants was not questioned by any other owner of the property represented by the signers.

We have not lost sight of the cases holding that an administrator or an executor not vested with title to the real estate of his testator is not an owner thereof within the meaning of the statutes directing city authorities to make improvements and levy special assessments to defray the cost thereof upon abutting lots, whenever a certain percentage of such owners petition the authorities to so act. There is sound reason for relaxing the definition in the former and restricting it in the latter instance. In Nebraska, an executor, unless authorized by his testator's will, an administrator or a guardian, cannot sell, convey or in any manner incumber the estate which he represents, except in conformity with an order of court made in proceedings provided therefor by statute, but it is his duty to exert himself under all circumstances to protect and conserve the estate within his possession or under his control. A cotenant also has authority to pro-

tect the property which he holds for the benefit of all of the persons interested therein. In some instances the executor or administrator merely added his title to his signature, and in other cases representatives signed without descriptive or qualifying words other than a reference to the property they were assuming to represent. It is insisted that the quality of those acts is individual, and not representative. *Allen v. City of Portland,* 35 Or. 420, is cited in support of the argument. In that case a title was rejected as surplusage and a signature upheld because the remonstrant owned the land in his individual capacity. And we are of opinion that, if a remonstrant is an owner of real estate in any sense of the word, and no other person claiming to own the identical property challenges the remonstrant's authority to represent said real estate, the municipal authorities cannot lawfully reject the signature for the sole reason that technical words of description are not grammatically included in the signature.

3. The signature of S. Ritchie by his attorney in fact, A. S. Ritchie, should be counted. Ritchie's power of attorney was not recorded at the time the remonstrance was signed, but it had been executed, and authorized the attorney to manage the real estate, lease it, collect rents and remove tenants. The principal never repudiated the act of his attorney, and the city council could not usurp the prerogative of the landowner.

4. Objection is made to the signature of K. Tombrink and of H. Tombrink, each for 60 feet frontage in said district. The litigants have stipulated that Herman Tombrink owned lot 6, block 61, and Katie Tombrink lot 4, block 23. The remonstrance is signed K. Tombrink and H. Tombrink. Mrs. Tombrink testified that she told her husband to sign her name to said remonstrance for her, and that he did so in her presence. The fact that he signed for himself by his initial only ought not to defeat his remonstrance. The signatures are genuine. Each signer is identified in the remonstrance as the owner of a definite

lot or a certain tract of land in the improvement district. No objection seems to have been made that signing by initial did not amount to a legal signature. We think, therefore, that Tombrink's signature should be counted. For the same reasons, the signatures of Peterson, Heafey, Gay, Fisher and McCreary should be counted. Jacob Levy, who signed as J. Levy, was a witness in the case, and testified to signing the remonstrance.

5. Certain property in the district is owned by the Fowler-Cowles Mortgage Company, a corporation, and its name was attached to the remonstrance by its president. All of the corporate stock was then, and still is, owned by the president and his wife. A nominal board of directors was in existence; but the president had possession and control of the property. The board of directors did not authorize the signature; but the stockholders all assented thereto, and have never repudiated this act of the president. The signature was sufficient to warn the city council that the owner of that property was objecting to the repavement.

We also count the signature of C. A. Birney. The testimony of the witness Wilcox, taken altogether, and uncontradicted as it is, establishes that Birney owned the property he purported to represent in the remonstrance. The signatures of Honey and Chandler, tenants in common, have been counted for but 60 feet, being lot 6, block 78. John Carroll's signature is counted. The deed dated July 6, conveying his property, was not delivered until August, subsequent to the enactment of the repavement ordinance. We have not counted the signatures of Rowley, Rudersdorf, Huberman, Frank Wallace or Darling & Sons, nor included the frontage they claimed to represent.

A careful examination of the evidence, assisted by the arguments and briefs of counsel for both sides, convinces us that the proof establishes that the owners of 1,585.3 feet of frontage within the improvement district remonstrated against the repavement thereof, and that the

remonstrance has an excess of 589 feet over the amount required by statute to divest the council of authority to make that improvement at the expense of said property owners.

The judgment of the district court therefore is right, and is

AFFIRMED.