MARY E. WARREN *v.* ANNA BORAWSKI ET AL.

MALTBIE, C. J., BROWN, JENNINGS AND ELLS, Js.[1]

[1] By agreement of counsel the case was argued before and decided by four judges.

Argued February 2—decided April 6, 1944.

*Cyril F. Gaffney,* for the appellant (plaintiff).

*William F. Mangan,* for the appellee (named defendant).

*Harold J. Eisenberg,* corporation counsel, for the appellees (defendants City of New Britain et al.).

JENNINGS, J.   Section 14 of the zoning ordinances of the city of New Britain, printed in the footnote,[1]

---

[1] This Ordinance may be amended, supplemented, changed, modified or repealed by the Common Council; but only after a reference to the Board of Adjustment, which Board shall make its recom-

provides for a three-fourths vote of the common council under the circumstances therein described and the question to be determined is whether those circumstances existed in this case.

On the 16th day of July, 1941, a petition was introduced into the common council for an extension of the present business "A" zone on both sides of Burritt Street. It was referred to the board of adjustment. The board, with at least five members voting favorably, as required by the ordinance, voted to deny the petition as presented but to recommend to the common council the granting of a substantial part thereof. Thereafter petitions of protest were filed with the city clerk against this recommendation. On December 17, 1941, the common council consisted of thirty members and at its meeting on that day the recommendation of the board of adjustment was accepted, nineteen members voting in favor of and eight against the recommendation. Persons who were admittedly "owners" of 143,230 square feet of the area within five hundred feet of the property involved in the proposed action filed protests, but the number of square feet represented by these owners was less than the 20 per cent required, 150,149 square feet.

A protest was also filed by Sophie T. Bukowski and

mendation in the premises within 30 days of such reference; and only after notice and public hearing by the Board of Adjustment in relation thereto, at which parties in interest and all citizens shall have an opportunity to be heard, and of which at least 15 days notice shall be given by newspaper publication as required by law. No amendment, supplement, change, modification or repeal of or in this Ordinance shall become effective except by a vote of not less than five members of the Board of Adjustment confirmed by a favorable vote of not less than three-fourths the entire membership of the Common Council, if a report adverse thereto shall have been rendered by the Board of Adjustment, or if a protest against such action be filed with the City Clerk by the owners of 20 per cent or more, either of the areas of the lots involved in the proposed action, or of areas immediately contiguous thereto and within 500 feet therefrom: not including publicly-owned areas in any case.

Celia Bukowski, executrices of the estate of Mary Bukowski. This estate had in its name 16,200 square feet of land. Mary Ferrante, tenant in common of an undivided one-half interest in a lot on Burritt Street having an area of 21,360 square feet, also filed a protest.

As appears by the finding, the vote in question was passed by less than three-fourths of the council membership. The plaintiff's first claim is based on the provision of the ordinance to the effect that a three-fourths vote is necessary if a report adverse to a change proposed by the council is rendered by the board of adjustment. It is the clear meaning of the ordinance that the three-fourths vote is required only to override a recommendation of the board. When a recommendation of the board is accepted by the council a majority vote of the latter is all that is necessary. This was the situation here.

The plaintiff also claims that a three-fourths vote was necessary because of the protests filed. The trial court did not give effect to the protests because it concluded that the owners of 20 per cent of the affected territory had not signed. If it was in error in holding ineffective the protests of either the executrices or the tenant in common referred to above, the protest would fulfill the requirements of the ordinance and the vote of the council would be void.

The word "owner" has no fixed meaning but must be interpreted in its context and according to the circumstances in which it is used. *Camp* v. *Rogers,* 44 Conn. 291, 298; *Brown* v. *New Haven Taxicab Co.,* 92 Conn. 252, 254, 102 Atl. 573; *Warren* v. *Salt Creek Drainage District,* 316 Ill. 345, 347, 147 N. E. 248; *Kilduff* v. *Boston Elevated Ry.,* 247 Mass. 453, 142 N. E. 98; *American Woolen Co.* v. *North Smithfield,* 29 R. I. 93, 69 Atl. 293; notes, 2 A. L. R. 778, 95 A. L. R. 1085.

Courts have not agreed in the application of the meaning of the word, even when due allowance is made for the differing phraseology of the statutes involved and the circumstances under consideration. As to a tenant in common, it has been held that he is an owner in the sense that he can sign a protest for all owners. *Los Angeles Lighting Co.* v. *Los Angeles,* 106 Cal. 156, 160, 39 Pac. 535. See, to the same effect, *Chan* v. *South Omaha,* 85 Neb. 434, 438, 123 N. W. 464; *Allen* v. *Portland* (petition for improvement), 35 Ore. 420, 446, 58 Pac. 509.

On the other hand, in holding that one tenant in common could not sign a petition for an improvement, the court, in *Newton* v. *Emporium Borough,* 225 Pa. 17, 21, 73 Atl. 984, said: "The position of the appellee in regard to this matter [that the part of the frontage proportionate to the interest of a signing tenant in common should be counted] cannot be sustained upon any theory either of law or common sense. The law requires the petition [for street paving] to be signed by the owners of the property. This means by all of the owners in any given piece of property. To hold otherwise would be to hold that if all the property on any block were owned by tenants in common, the holder of an undivided 1-100th interest in the same might cause the block to be paved and the lien therefore to attach to the property, although the owners of the other 99-100ths interest were opposed to it. The position that the proportionate part of the frontage representing the proportion of the cotenant's interest may be counted upon his signature is equally untenable. The petitioner in this case does not own twenty-five feet of this property. His interest is an undivided interest in every foot of it, and no particular foot frontage may be set aside for him, because in every foot so set aside his cotenant would be an equal owner."

To the same effect are *California Borough* v. *Powell,* 50 Pa. Super. 521, 523; *Marcus* v. *Board of Street Commissioners,* 252 Mass. 331, 335, 147 N. E. 866; *Mulligan* v. *Smith,* 59 Cal. 206, 225; *People ex rel. Brownell* v. *Assessors,* 109 N. Y. S. 991, 994; *Merritt* v. *Kewanee,* 175 Ill. 537, 544, 51 N. E. 867.

The purpose of the statute in requiring a three-fourths vote of the council if a protest is filed by owners of 20 per cent of the property affected is to give some protection to those owners against changes to which they object. A petition for an improvement is positive and a protest against a change in zone, negative, but both involve changes in existing conditions and the reasoning of the Pennsylvania court applies, in substance, to both situations. It is more practical and logical to give the same meaning to the word "owner" in both cases. As shown above, the cases are nearly unanimous in holding that a cotenant is not an "owner" when a petition for improvement is involved, and we hold that, as well, within the meaning of the ordinance in question those owning the entire interest in the property must join in order to make a valid protest.

The courts are also divided in interpreting the word "owner" in the case of an executor or administrator. In *Chan* v. *South Omaha,* supra, it was held that an administrator could effectively protest but it was pointed out that the administrator was in actual as well as theoretical control of the real estate and was managing it for the benefit of the devisees, and that the latter did not object. On the other hand, the weight of authority denies a personal representative the right to sign a petition for improvements on the basic ground that he does not have title and has possession of the real property for the limited purpose of settling the estate. *People ex rel. Brownell* v. *Assessors,*

supra; *Mulligan* v. *Smith*, supra; *Mayor of Mobile* v. *Dargan*, 45 Ala. 310, 321; *Ahern* v. *Texarkana*, 69 Ark. 68, 74, 61 S. W. 575; General Statutes § 4956. With regard to an executor or administrator, as in the case of a cotenant, we conclude that it is more practical and logical to hold that he is not an "owner" within the meaning of the ordinance. All that appears from the finding in this case with reference to the Bukowski property is that, of six heirs, two, who were executrices, signed. Nothing is said with reference to their relationship to the estate or the wishes of the four other heirs, who signed neither personally nor by agent. The trial court was not in error in concluding that the executrices were not owners within the meaning of the ordinance. See *O'Connor* v. *Chiascione*, 130 Conn. 304, 306, 33 Atl. (2d) 336.

There is no error.

In this opinion the other judges concurred.