LILLIAN W. KIRKHAM ET AL. v. CLYDE FINNEMORE ET AL.

SUPERIOR COURT HARTFORD COUNTY FILE NO. 79874

Memorandum filed November 3, 1948.

*Kirkham, Camp, Williams & Richardson,* of New Britain, for the Plaintiffs.

*Arnold M. Sweig* and *Milton M. Koskoff,* of Plainville, for the Defendants.

INGLIS, J. This is an action for a declaratory judgment declaring a purported change of zone in the town of Plainville null and void and for an injunction. The action is brought by certain owners of property located on New Britain Avenue and elsewhere in that town against the town of Plainville, the members of the zoning commission of that town, the building inspector of the town, and William S. Landwehr and Herbert Landwehr, who own property at the corner of Cooke Street and New Britain Avenue .

Prior to January, 1947, the area involved in this litigation was zoned as residence A zone. At some time prior to January 17, 1947, the defendnts Landwehr petitioned the zoning commission of Plainville "to amend the Zoning Regulations . . . by changing the north side of New Britain Avenue between Cooke Street and Ledge Road, to a depth of two hundred or more feet north of New Britain Avenue, from a residential use district to a business use district." This application was indorsed by four other owners of property within the limits of the proposed change. The zoning commision advertised a hearing on this and some other applications for the evening of January 17, 1947.

At the date of the hearing there was filed with the commission a document sufficiently definite in terms to be clearly a protest against the proposed change of zone, signed by nine persons and with the signature of a tenth, Mrs. L. W. Kirkham, incorporated by reference. Of these signatories, Mrs. Kirkham owned property opposite the area in question on Cooke Street, Mary S. Hart and Emma M. Rowe owned property opposite it on New Britain Avenue, and Charles H. Relay owned an undivided one-half interest in other property opposite the area in question on New Britain Avenue. The other one-half interest in the Relay property was owned by Ora H. Relay, Charles H. Relay's wife, who had not signed the protest. Mr. Relay was authorized to act as his wife's agent but he had not signed the protest as such. The proposed change was to be of something over 200 feet frontage on Cooke Street and about 3200 feet on New Britain Avenue. In order to make up 20 per cent of the frontage opposite that there would have to be included with the property of the other signers of the protest the Relay property. Under the holding in *Warren* v. *Borawski*, 130 Conn. 676, the Relay property could not be so included. That such was the law, however, was not known to the commission.

After the hearing on January 17 the records of the zoning commission disclose: "The request of H. & W. Landwehr was thoroughly discussed and the vote was three in favor of the change and two against." Then, after a similar record relating to an application of Joseph E. Tinty, the record reads: "Because it was considered that over 20 per cent of the neighbors protested the last two changes it was voted to pass these two over to the town counsel for a complete check. This meeting is temporarily postponed awaiting the result of the investigation."

After investigating the matter, the town counsel reported to the commission that in his opinion the protest was effective to require a unanimous vote of the commission to effect the change. Accordingly, to quote from the records, "A special meeting was held on March 12, 1947 to conclude the adjourned meeting of January 17, 1947 . . . . The attorney's opinion was read on the Landwehr case and found to concur with the opinion of the board. The board has also checked the assessors' maps to check their decision. With this information the board voted to sustain their vote of the adjourned meeting of January 17. The Landwehr and Tinty requests are therefore both denied."

When this result was published in the newspaper, the attorney for the Landwehrs, recognizing that the failure of Mrs. Relay to sign the protest had resulted in a lack of signers who were owners of 20 per cent of the property located opposite the area in question, and making a claim that the protest was ineffective for that and other reasons, appeared before the commission on Aprili 7, 1947, and asked for a rehearng "to hear arguments to be restricted solely to the acceptance or rejection of a paper signed by persons in objection." The commission voted four to one in favor of a rehearing. The actual vote for a rehearing did not limit the scope of the rehearing. The hearing was set for April 25 and pursuant to the vote notice thereof was published in the New Britain Herald. In terms that notice did purport to limit the hearing as the attorney for the Landwehrs had requested.

Prior to the opening of the hearing on April 25, there was filed with the commission a written statement made by Ora H. Relay to the effect that her husband had signed the original protest wth her approval and representing her as well as himself. There was also filed a new protest signed by fifteen people, among whom were owners of much more than 20 per cent of the area of the lots located directly opposite to the area in question.

The hearing was held, but the commission took no action immediately. At the regular meeting of the commission held on May 12, 1947, at which only four of the five members of the commission were present, the Landwehr application was taken up and discussed. The minutes of that meeting make no reference to Mrs. Relay's statement or to the new protest but disclose that it was voted that the original protest be rejected "because the protest was not definite as to the particular application and it lacked the required signatures of the required

number of signers to make the 20 per cent legal requirement as to the opposite owners effective. It was further voted that the premises described in the Landwehr application for a change of zone be changed from residence A zone or use district to business zone or use district, the area so changed, however to cover only the premises included within a distance 200 feet north of New Britain Avenue and that said zone change become effective on June 16, 1947." As a matter of fact, the vote on these votes was two in favor and two opposed, and the only reason why it was considered by the commission that the votes had been carried was because it was known that the absent member, Mr. Couch, favored the change. Pursuant to the purported votes notice of the change of zone was duly published.

Under the foregoing facts, the following conclusions have been reached: The terms of the original protest were sufficiently definite to be an effective protest against the proposed change of zone under General Statutes, Cum. Sup. 1939, § 132e, except for the fact that it had not been signed by the owners of 20 per cent or more of the area of the lots directly opposite thereto. If the latter requirement had been fulfilled, it would, under the statute, have required the unanimous vote of the zoning commission to effect the change. The failure of Mrs. Relay, as one of the tenants in common of the Relay property, to sign the protest left that property completely unrepresented upon the protest. *Warren* v. *Borawski*, 130 Conn. 676. For that reason the protest when filed was not effective to require the unanimous vote of the commission.

The vote of January 17, 1947, was not definitive. In the first place it did not definitely fix the bounds of the area which was to be changed to a business zone. It was simply a vote in favor of the Landwehr request, and that request related to an area extending 200 feet or more back from New Britain Avenue. Upon the vote, therefore, there was no limit fixed for the change back from New Britain Avenue. In the second place, the vote failed to fix the time when the change should become effective and made no provision for publication of notice of the change, both of which are required by the statute. And, in the third place, it is apparent that it was not considered definitive by the commission because the final action at the meeting was to pass the matter over to the town counsel for a check, and the meeting was adjourned to await the result of that investigation.

The action of the commission on March 12 certainly was not a definitive action in favor of the change, because the result

of that action was considered by the commission and declared to be that the Landwehr request was denied.

The effect of the vote of April 7 was to reopen the matter, so that down to the time of the hearing on April 25 the whole matter of the change of zone was open and the commission had taken no definite action to make the change. Section 132e clearly contemplates that a protest against the change, to require unanimous action, may be filed at any time prior to the final taking of the definitive action which changes the zone. Accordingly, it was still competent so far as the time element was concerned for the protestants to file a protest at the hearing held on April 25. The statement filed by Mrs. Relay at that time was adequate to complete the original protest and make it effective, and also the new protest filed at that time was adequate to require a unanimous vote of the commission. The attempt of the majority of the commission to limit the hearing to the sole question of the effectiveness of the first protest was entirely nugatory. It flew in the face of the statute, which permits the filing of a protest at any time prior to final action. It certainly is not competent for a zoning commission by its vote to abridge the rights of possible protestants vested in them by the statute.

Accordingly, when the matter came on for a vote of the commission on May 12 there was before the commission a protest which required a unanimous vote to make the proposed change. Such a vote was not had. The vote was two to two. The commission had no right to consider that Mr. Couch was voting in favor of the change. It is fundamental that only such votes as are actually cast may be counted. The fact was, therefore, that the proposed change failed to carry not only because it lacked a unanimous vote but also because it lacked even a majority vote.

The action of the commission on January 17 not having been a definitive vote, the action of March 12 having been against the change, and the action of May 12 having in reality failed to order the change, the end result is that there has been no change of zone.

The plaintiffs also claim that the purported change was a nullity because it was not reasonable and proper. Upon all of the evidence it cannot be found that a conclusion by the commission to make the change would have been one which was so unreasonable that it could be said that the commission acted illegally and arbitrarily. Accordingly, the change could not have been held invalid on this ground.

The defendants contend that no declaratory judgment should enter because it is not alleged that there is a bona fide dispute between the parties. The allegations of the complaint are adequate, however, to indicate that such a bona fide dispute does exist. Accordingly, it is concluded that it is a fit case in which to enter such a judgment. So far as the injunctions sought by the plaintiff are concerned, there is no evidence indicating the probability that any of the defendants intend to act upon the basis that there has been a change of zone in the face of a declaratory judgment that the change has not become effective.

Judgment may enter declaring that the purported change of zone referred to in the complaint is null and viod. No costs are to be taxed in favor of any party.