High Ridge Real Estate Owner, LLC *v.* Board of Representatives

HIGH RIDGE REAL ESTATE OWNER, LLC *v.*
BOARD OF REPRESENTATIVES OF
THE CITY OF STAMFORD
(SC 20595)

Robinson, C. J., and D'Auria, Mullins,
Kahn, Ecker and Keller, Js.*

*Syllabus*

Pursuant to the Stamford Charter (§ C6-40-9), after the Zoning Board of the City of Stamford issues a decision concerning an amendment to the Stamford zoning regulations, a protest petition may be filed with the zoning board opposing such amendment, which the zoning board shall refer to the Stamford Board of Representatives, and the board of representatives shall thereafter approve or reject such amendment. If the amendment applies to two or more zones, the petition must include "the signatures of at least [300 Stamford] landowners . . . ."

The plaintiff, an owner of real property in the city of Stamford, appealed to the trial court from the decision of the defendant, the Board of Representatives of the City of Stamford, which had rejected a decision by the Stamford Zoning Board to approve the plaintiff's application to amend certain Stamford zoning regulations. The plaintiff had sought to have the zoning regulations amended to permit the development of a family health and fitness facility in a commercial district. After the zoning board approved the plaintiff's application with modifications, which affected more than one zone, a local homeowners association filed a protest petition, pursuant to § C6-40-9 of the charter, opposing the approved zoning amendment. The petition contained the signatures of 120 individuals who were sole owners of a total of 120 parcels of land in Stamford, 240 individuals who were joint owners of a total of another 120 parcels of land in Stamford, and another 110 individuals who were joint owners of yet another 110 parcels of land in Stamford but under circumstances in which one or more individuals with joint ownership in one of those 110 parcels did not sign the petition. Without determining whether the petition contained the requisite number of signatures required by § C6-40-9, the zoning board referred the petition to the board of representatives. Subsequently, a subcommittee of the board of representatives determined that the protest petition contained

---

* This case originally was scheduled to be argued before a panel of this court consisting of Chief Justice Robinson and Justices D'Auria, Mullins, Kahn, Ecker and Keller. Although Justice Ecker was not present when the case was argued before the court, he has read the briefs and appendices, and has listened to a recording of the oral argument prior to participating in this decision.

High Ridge Real Estate Owner, LLC *v.* Board of Representatives

the requisite number of signatures and that it was therefore valid. The subcommittee also voted to recommend that the board of representatives accept the petition and reject the zoning board's approval of the plaintiff's application seeking an amendment to the zoning regulations. The board of representatives implemented both of those recommendations. On appeal to the trial court, the plaintiff claimed that the board of representatives lacked authority to determine the validity of the protest petition under the charter and that the petition was invalid insofar as it did not contain the number of signatures required by § C6-40-9. The trial court rendered judgment sustaining the plaintiff's appeal, concluding that the board of representatives did not have authority to determine the validity of the protest petition and that, even if it did, the petition was invalid because it did not contain the 300 signatures required under § C6-40-9. In so concluding, the trial court relied in part on precedent concerning joint tenancy in the context of protest petitions, which, the court explained, requires all of the owners of a parcel of property to sign a protest petition in order for the protest to be considered valid. On the basis of that precedent, the trial court determined that the petition contained only 240 signatures: 120 signatures from the 120 sole owners of property, 120 signatures from the 240 individuals who jointly owned another 120 properties, and 0 signatures from the 110 individuals who were joint owners of an additional 110 properties whose additional joint owners did not sign the petition. The court thus determined that the board of representatives did not have jurisdiction to reject the zoning board's decision approving the plaintiff's application to amend the zoning regulations. The board of representatives thereafter appealed from the trial court's judgment. *Held*:

1. Consistent with its decision in *Strand/BRC Group, LLC* v. *Board of Representatives* (342 Conn. 365), which construed the Stamford charter and concluded that the board of representatives did not have authority to consider whether a protest petition was valid under a provision (§ C6-30-7) of the charter that was similar to § C6-40-9, this court concluded that the board of representatives did not have authority to consider the validity of the protest petition in the present case and that, under § C6-40-9 of the charter, the zoning board, rather than the board of representatives, has authority to determine the validity of a protest petition and must do so before referring such a petition to the board of representatives.

2. Even though the board of representatives did not have authority to determine the validity of the protest petition, it nevertheless was presented with a valid petition with more than 300 signatures, contrary to the conclusion of the trial court, and, accordingly, it had authority to consider the merits of the zoning board's amendment to the zoning regulations: although prior decisions have interpreted the term "owner" of land for purposes of protest petitions and have indicated that all joint owners must participate for the protest related to their jointly owned

342 Conn. 423 MARCH, 2022 425

High Ridge Real Estate Owner, LLC *v.* Board of Representatives

property to be valid, the protest provisions at issue in those cases dealt with a percentage of owners of land or the owners of a percentage of land, not, as in the present case, a strict number of signatures of landowners, and, therefore, those cases did not resolve, for purposes of the present case, how the actual signatures of landowners should be counted once all joint owners have added their signatures to a protest petition; moreover, the term "signature," for purposes of § C6-40-9, means a landowner's writing of his or her name on a protest petition, and, under this definition, even if all owners of jointly held property must sign the petition, each landowner's name included in the petition must count toward the total number of signatures; accordingly, for purposes of § C6-40-9, the petition contained the valid signatures of at least 360 landowners, that is, 120 sole landowners and 240 joint landowners, the trial court thus incorrectly determined that there were only 240 valid signatures, because the petition contained the requisite number of signatures, the petition was valid, and, therefore, the case was remanded to the trial court for consideration of the plaintiff's remaining claim regarding the decision of the board of representatives on the merits of the zoning board's amendment to the zoning regulations.

(*One justice concurring separately*)

Argued September 10, 2021—officially released March 15, 2022

*Procedural History*

Appeal from the decision of the defendant rejecting a decision by the Zoning Board of the City of Stamford approving certain text changes to the city's zoning regulations to permit the development of a family health and fitness facility, brought to the Superior Court in the judicial district of Stamford-Norwalk and transferred to the judicial district of Hartford, Land Use Litigation Docket; thereafter, the case was tried to the court, *Hon. Marshall K. Berger*, *Jr.*, judge trial referee, who, exercising the powers of the Superior Court, rendered judgment sustaining the appeal, from which the defendant, on the granting of certification, appealed. *Reversed; further proceedings.*

*Patricia C. Sullivan*, for the appellant (defendant).

*David T. Martin*, for the appellee (plaintiff).

High Ridge Real Estate Owner, LLC *v.* Board of Representatives

*Opinion*

MULLINS, J. The dispositive issue in this appeal is whether the defendant, the Board of Representatives of the City of Stamford (board of representatives), properly considered a protest petition that opposed zoning amendments approved by the Zoning Board of the City of Stamford (zoning board). The plaintiff, High Ridge Real Estate Owner, LLC, filed an application with the zoning board to amend the zoning regulations of the city of Stamford (city). The zoning board approved the zoning amendment. Thereafter, local property owners filed a protest petition pursuant to § C6-40-9 of the Stamford Charter (charter),[1] which opposed the amendment. The board of representatives determined that the protest petition was valid and, thereafter, considered and rejected the amendment. The plaintiff appealed from the decision of the board of representatives to the trial

[1] Section C6-40-9 of the charter provides: "After the effective date of the Master Plan, if following a public hearing at which a proposed amendment to the Zoning Regulations, other than the Zoning Map was considered, a petition is filed with the Zoning Board within ten days after the official publication of the [Zoning] Board's decision thereon opposing such decision, such decision with respect to such amendment shall have no force or effect, but the matter shall be referred by the Zoning Board to the Board of Representatives within twenty days after such official publication, together with written findings, recommendations, and reasons. The Board of Representatives shall approve or reject any such proposed amendment at or before its second regularly scheduled meeting following such referral. When acting upon such matters, the Board of Representatives shall be guided by the same standards as are prescribed for the Zoning Board in Section C6-40-1 of this Charter. The failure by the Board of Representatives either to approve or reject said amendment within the above time limit shall be deemed as approval of the Zoning Board's decision. The number of signatures required on any such written petition shall be one hundred, or twenty percent of the owners of privately-owned land within five hundred feet of the area so zoned, whichever is least, if the proposed amendment applies to only one zone. All signers must be landowners in any areas so zoned, or in areas located within five hundred feet of any areas so zoned. If any such amendment applies to two or more zones, or the entire City, the signatures of at least three hundred landowners shall be required, and such signers may be landowners anywhere in the City."

High Ridge Real Estate Owner, LLC *v.* Board of Representatives

court, claiming that the board of representatives did not have the authority to consider whether the protest petition was valid, and asserting that the petition was not valid because it did not contain the signatures of "at least [300] landowners" anywhere in the city, as required by § C6-40-9. The trial court sustained the plaintiff's appeal. Although we conclude that the board of representatives did not have the authority to determine the validity of the protest petition, we conclude that it was a valid petition because it contained the requisite number of signatures. Accordingly, we reverse the judgment of the trial court sustaining the plaintiff's appeal and remand the case to that court to determine whether the board of representatives properly rejected the amendment.

The following facts are undisputed. In February, 2017, the plaintiff submitted an application to the zoning board seeking to amend the zoning regulations. Specifically, the plaintiff sought a change that would allow the development of a "Gymnasium or Physical Culture Establishment" in a commercial district designated as a "C-D Designed Commercial District." This change would affect more than one zone in the city. The zoning board approved the plaintiff's application, as modified.

Following the approval of the plaintiff's application, the president of the Sterling Lake Homeowners Association filed a protest petition with the zoning board, pursuant to § C6-40-9 of the charter. The petition contained 696 signatures.[2] Then, without expressly determining

[2] With respect to the 696 signatures, the parties stipulated to the following: (1) "120 signers were the sole owners of privately owned land in [the city]," (2) "240 signers were the owners of privately owned property in [the city] where there were other owners with an interest in the property who also signed," (3) "110 signers were the owners of privately owned property in [the city] where one or more owners with an interest in the property did not sign," (4) "164 signers were the owners of condominium units," and (5) "62 signers were individuals whose status was questioned." With respect to the fifth group of signers, the parties further stipulated to the following: "Letters were sent to these 62 owners. [Eleven] responded that they were

whether the protest petition was valid in that it contained the requisite number of signatures, i.e., of at least 300 landowners, the zoning board referred the petition to the board of representatives.

Thereafter, the Land Use/Urban Redevelopment Committee (land use committee), a subcommittee of the board of representatives, held a hearing to consider whether the petition contained the requisite number of signatures and was, therefore, valid. The land use committee voted to recommend that the board of representatives accept the petition, which the board of representatives subsequently did. The land use committee then held a public hearing on the plaintiff's application for an amendment. After the hearing, the land use committee voted to recommend that the board of representatives reject the zoning board's approval of the plaintiff's application for an amendment, which the board of representatives subsequently did.

The plaintiff then appealed to the trial court.[3] In its appeal, the plaintiff contended, inter alia, that (1) the board of representatives lacked the authority to determine the validity of the protest petition under the char-

not owners of land in [the city]. [One] responded that he did not want to be involved. [Twenty-four] responded that they were owners of privately owned property in [the city]; 26 have not yet responded."

As we explain subsequently in this opinion, because we conclude that the signatures of the 120 sole owners of privately held land and the signatures of the 240 joint owners of privately held land where the other owners with an interest in the property also signed constitute 360 landowners' signatures, which exceeds the minimum threshold of 300 landowners necessary under § C6-40-9 of the charter, we need not consider whether the other 336 signatures were valid.

[3] Section C6-40-17 of the charter provides in relevant part: "Any person aggrieved by a decision of the Board of Representatives or by a failure of that Board to decide a matter referred to it within the prescribed time pursuant to Section C6-40-5, C6-40-6 or C6-40-9 of this Charter may appeal therefrom within fifteen days of such decision or such expiration of prescribed time, whichever first occurs, to the Superior Court, Judicial District of Stamford/Norwalk at Stamford."

High Ridge Real Estate Owner, LLC *v.* Board of Representatives

ter, and (2) the petition was invalid because it did not include the requisite number of signatures. The plaintiff also claimed that the board of representatives erred in rejecting the amendment.

The trial court sustained the plaintiff's appeal. Specifically, the trial court concluded that the board of representatives did not have the authority to determine the validity of the protest petition because the charter did not give the board such authority. The trial court also concluded that, even if the board of representatives had the authority to determine the validity of the petition, the petition was not valid because it did not contain the 300 signatures of landowners required by § C6-40-9 of the charter. The trial court reasoned that it was "bound by precedent as to joint tenancies and as to condominium owners in the context of protest petitions." According to that precedent, the court explained, all of the owners of a parcel of land must sign a petition for the protest to be considered valid.

The trial court further explained that, "[i]n the present case, petition signers who held their property in a joint tenancy or as fractional owners of a condominium should not have been counted toward the required 300 signatures because all of the owners of the property had not signed the petition." The trial court then determined that, "[w]ith only 240 valid signatures, the protest petition was invalid, and the board [of representatives] did not have jurisdiction to reject the decision of the zoning board approving the text amendments."[4] (Footnote

---

[4] The trial court did not explain precisely how it determined that there were 240 valid signatures. It seems, however, that the trial court adopted the view espoused by Valerie T. Rosenson, the legislative officer of the board of representatives, that "240 signers were determined to be the joint landowners of 120 parcels of land in the [city], constituting 120 landowners . . . ." (Citation omitted.) The court then added this figure to the 120 sole landowners to arrive at a total of 240 valid signatures.

High Ridge Real Estate Owner, LLC *v.* Board of Representatives

omitted.) Accordingly, the trial court sustained the plaintiff's appeal. This appeal followed.[5]

On appeal, the board of representatives claims that the trial court incorrectly concluded that the board did not have the authority to determine the validity of the protest petition. The board of representatives also claims that the trial court incorrectly determined that the petition did not have the signatures of at least 300 landowners, as required by § C6-40-9 of the charter.

As we explained in *Strand/BRC Group*, *LLC* v. *Board of Representatives*, 342 Conn. 365,      A.3d     (2022) (*Strand*), "[t]he board of representatives, in considering the proposed amendment, was called [on] to perform a legislative function. . . . Because the board of representatives was acting in a legislative capacity, the decision of the board must not be disturbed by the courts unless the party aggrieved by that decision establishes that the [board] acted arbitrarily or illegally. . . . If the board of representatives exceeded the scope of its permissible authority to act under the charter, then its decision was contrary to law and an abuse of discretion. . . .

"[A city] charter . . . constitutes the organic law of the municipality. . . . [A] city's . . . charter is the fountainhead of municipal powers . . . . The charter serves as an enabling act, both creating power and prescribing the form in which it must be exercised. . . . Agents of a city, including [the board of representatives], have no source of authority beyond the charter. . . . Their powers are measured and limited by the express language in which authority is given or by the implication necessary to enable them to perform some duty cast upon them by express language. . . .

_____

[5] The board of representatives appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

High Ridge Real Estate Owner, LLC *v.* Board of Representatives

"The proper construction of the charter presents a question of law, over which our review is plenary. . . . In construing a city charter, the rules of statutory construction generally apply. . . . In arriving at the intention of the framers of the charter the whole and every part of the instrument must be taken and compared together. In other words, effect should be given, if possible, to every section, paragraph, sentence, clause and word in the instrument and related laws." (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., 373–75.

I

We first consider whether the board of representatives had the authority, under the charter, to determine the validity of the protest petition in the present case. In *Strand/BRC Group, LLC* v. *Board of Representatives*, supra, 342 Conn. 378–79, which was also released today, we also construed the Stamford charter and concluded that the board of representatives does not have the authority to consider whether a protest petition was valid under § C6-30-7,[6] a provision of the charter similar to the one at issue in the present case.

[6] Section C6-30-7 provides: "If twenty (20) percent or more of the owners of the privately-owned land in the area included in any proposed amendment to the Master Plan, or the owners of twenty (20) percent or more of the privately-owned land located within five hundred (500) feet of the borders of such area, file a signed petition with the Planning Board within ten days after the official publication of the decision thereon, objecting to the proposed amendment, then said decision shall have no force or effect but the matter shall be referred by the Planning Board to the Board of Representatives within twenty days after such official publication, together with written findings, recommendations and reasons. The Board of Representatives shall approve or reject such proposed amendment at or before its second regularly-scheduled meeting following such referral. When acting upon such matters the Board of Representatives shall be guided by the same standards as are prescribed for the Planning Board in Section C6-30-3 of this Charter. The failure of the Board of Representatives either to approve or reject said amendment within the above time limit shall be deemed as approval of the Planning Board's decision."

In *Strand*, the Planning Board of the City of Stamford—which is functionally the equivalent of the zoning board—referred a protest petition to the board of representatives without determining the petition's validity. See id., 370. Instead, the board of representatives determined the validity. Id., 371. After the referral, the board of representatives voted to accept the petition and then ruled on the amendment. See id. In arriving at our conclusion that the board of representatives lacked the authority to address the validity of the petition, we relied on *Benenson* v. *Board of Representatives*, 223 Conn. 777, 783, 612 A.2d 50 (1992), in which this court held that the language of a former provision of the charter, § C-552.2—which is substantially similar to § C6-30-7—permitted the board of representatives only to accept or reject the amendment, not to determine the validity of the protest petition itself. See *Strand/ BRC Group, LLC* v. *Board of Representatives*, supra, 342 Conn. 377. Thus, in accordance with *Benenson*, we concluded in *Strand* that the ruling of the board of representatives on the validity of the petition was unauthorized and invalid. Id., 377–78. We also determined that, because the protest petition challenging the amendment did not contain the requisite number of signatures, the petition was not valid, and, therefore, we concluded that the trial court properly sustained the plaintiffs' appeal from the board of representatives' rejection of the amendment. Id., 390.

Similarly, the charter provisions in *Strand*, *Benenson* and the present case authorize the board of representatives only to approve or reject the amendment, not the protest petition. Accordingly, we conclude here, as we did in *Strand*, that the board of representatives did not have the authority to consider the validity of the petition. More specifically, we conclude that, under § C6-40-9 of the charter, the zoning board has the authority to determine the validity of a protest petition

High Ridge Real Estate Owner, LLC *v.* Board of Representatives

and must do so before referring it to the board of representatives. See id., 377–78.

II

As it did in *Strand*, the board of representatives in the present appeal contends that, regardless of whether it had the authority to decide the validity of the protest petition, it plainly had authority to accept or reject the plaintiff's proposed zoning amendment. Therefore, the board of representatives argues, notwithstanding the validity determination on the petition, its vote on the amendment was proper. In other words, it argues that its vote on the validity of the protest petition was "harmless, superfluous and irrelevant." Conversely, the plaintiff asserts that, if the board of representatives lacked the authority to determine the validity of the petition, it had no basis to review the amendment, and the question of whether the petition contained the necessary number of signatures is irrelevant.

In *Strand*, we recognized that the argument of the board of representatives' might well be persuasive if, notwithstanding the board's erroneous vote on the validity of the protest petition, the petition at issue nevertheless was "a legally valid petition pursuant to the charter." *Strand/BRC Group, LLC* v. *Board of Representatives*, supra, 342 Conn. 379. The petition protesting the amendment in *Strand*, however, was invalid, as a matter of law, because it did not have the requisite number of signatures. See id., 390. Consequently, without a valid petition, the board of representatives lacked the authority to vote on the merits of the amendment. Id. The scenario in the present case is different.

Here, we address the circumstance left open in *Strand*, that is, what happens when the board of representatives erroneously rules on the validity of a protest petition, but the petition is actually a valid petition, in that it contains the requisite number of signatures. For

High Ridge Real Estate Owner, LLC *v.* Board of Representatives

reasons we discuss next, because the petition protesting the amendment in the present case was valid, in that it contained the signatures of more than 300 landowners, the board of representatives properly considered the merits of the amendment, notwithstanding its erroneous ruling on the validity of the petition.

The starting point in our analysis is to consider the meaning of the term "landowner," as it is used in the charter provision at issue. The plaintiff asserts, and the trial court found, that the interpretation of the term "landowner" is controlled by the cases interpreting "owner" in other protest provisions. Specifically, the plaintiff claims that our interpretation of "landowner" should require that a cotenant is not a landowner unless all cotenants of the jointly held land have signed the petition. In response, the board of representatives asserts that these cases requiring the signatures of cotenants are inapplicable because they address a different type of requirement than that involved here. That is, the protest provisions at issue in those cases were meant to count land, whereas the protest provision in § C6-40-9 that is at issue in this case counts people through their signatures. See, e.g., *Marks* v. *Bettendorf's*, *Inc.*, 337 S.W.2d 585, 594 (Mo. App. 1960) (noting distinction).

Section C6-40-9 of the charter provides in relevant part: "[I]f following a public hearing at which a proposed amendment to the Zoning Regulations . . . a petition is filed with the Zoning Board within ten days after the official publication of the [Zoning] Board's decision thereon opposing such decision, such decision with respect to such amendment shall have no force or effect, but the matter shall be referred by the Zoning Board to the Board of Representatives within twenty days after such official publication, together with written findings, recommendations, and reasons. . . . If any such amendment applies to two or more zones, or

High Ridge Real Estate Owner, LLC *v.* Board of Representatives

the entire City, the signatures of at least three hundred landowners shall be required, and such signers may be landowners anywhere in the City.'' The parties agree that the amendment at issue in the present case applied to two or more zones; therefore, it is undisputed that ''the signatures of at least [300] landowners . . . anywhere in the [c]ity'' were required.

It is important, at the outset, to note that the provision at issue is worded and structured differently from other protest provisions that this court has previously considered. The salient difference is that, unlike other charter provisions, this charter provision envisions satisfaction of protest petition requirements by *signatures of a specific number of landowners*, not the owners of a percentage of the land, or a percentage of the owners of land. Thus, to resolve this appeal, we must assess both what constitutes a landowner under this provision and what the city intended with respect to the counting of signatures of landowners.

Neither the term ''landowners'' nor ''signatures'' is defined in § C6-40-9 or anywhere else in the charter. This court has repeatedly explained that, ''in the absence of statutory definitions, we look to the contemporaneous dictionary definitions of words to ascertain their commonly approved usage.'' *Ledyard* v. *WMS Gaming, Inc.*, 338 Conn. 687, 697, 258 A.3d 1268 (2021). ''Dictionaries in print at the time the statute was enacted can be most instructive.'' *Wilton Campus 1691, LLC* v. *Wilton*, 339 Conn. 157, 171, 260 A.3d 464 (2021). ''In construing a [municipal] charter, the rules of statutory construction generally apply.'' (Internal quotation marks omitted.) *Cook-Littman* v. *Board of Selectmen*, 328 Conn. 758, 768, 184 A.3d 253 (2018).

The term ''landowner'' has been consistently defined in dictionaries in print both shortly before and since 1953, when this charter provision was promulgated. See

Stamford Charter (1954 Rev.) § 553.2 (now § C6-40-9). For instance, the second edition of Webster's New International Dictionary defines "landowner" as "[a]n owner of land." 3 Webster's New International Dictionary (2d Ed. 1957) p. 1389; see, e.g., Funk & Wagnalls New Standard Dictionary of the English Language (1946) p. 1384 (defining "landowner" as "[o]ne who owns land").

In the context of protest petitions, we recognize that, in certain situations, the term "owner" has acquired a specific meaning. Indeed, this court and other courts of this state have addressed the requirements for protest petitions as they relate to ownership of a percentage of land or ownership of a percentage of area under General Statutes § 8-3 (b)[7] and under the Stamford charter. In arriving at the meaning of the term "owner," we have recognized that the purpose of protest provisions is to protect owners who object to a change that will affect their property, and that purpose must be balanced against the public interest. See, e.g., *Steiner*, *Inc.* v. *Town Plan & Zoning Commission*, 149 Conn. 74, 76, 175 A.2d 559 (1961). Thus, although our cases do not address the term "landowner" specifically or a protest provision that requires only a specified number of landowner signatures, we nevertheless find these cases instructive in effectuating the purpose of protest peti-

___

[7] General Statutes § 8-3 (b) provides: "Such regulations and boundaries shall be established, changed or repealed only by a majority vote of all the members of the zoning commission, except as otherwise provided in this chapter. In making its decision the commission shall take into consideration the plan of conservation and development, prepared pursuant to section 8-23, and shall state on the record its findings on consistency of the proposed establishment, change or repeal of such regulations and boundaries with such plan. If a protest against a proposed change is filed at or before a hearing with the zoning commission, signed by the owners of twenty per cent or more of the area of the lots included in such proposed change or of the lots within five hundred feet in all directions of the property included in the proposed change, such change shall not be adopted except by a vote of two-thirds of all the members of the commission."

tions and understanding what is required to be an owner of land for purposes of filing a protest petition.

For instance, in *Warren* v. *Borawski*, 130 Conn. 676, 37 A.2d 364 (1944), this court considered protest petitions filed under a zoning ordinance of the city of New Britain. That ordinance required a vote of not less than three-fourths of New Britain's Common Council (council) to pass an amendment "if a protest against such action be filed with the [c]ity [c]lerk by *the owners of 20 [percent] or more, either of the areas of the lots involved in the proposed action, or of areas immediately contiguous thereto and within 500 feet therefrom*: not including [publicly owned] areas in any case." (Emphasis added.) Id., 678 n.1. In *Warren*, protest petitions were filed with the New Britain city clerk, but "[t]he trial court did not give effect to the protests because it concluded that the owners of 20 [percent] of the affected territory had not signed." Id., 679.

On appeal, this court considered whether the trial court had correctly determined that a protest petition signed by one tenant in common, but not by her cotenant, was not valid. See id. This court explained that "[t]he word 'owner' has no fixed meaning but must be interpreted in its context and according to the circumstances in which it is used." Id. Ultimately, this court relied on the purpose of protest petitions and concluded that "[t]he purpose of the [ordinance] in requiring a three-fourths vote of the council if a protest is filed by owners of 20 [percent] of the property affected is to give some protection to those owners against changes to which they object. . . . [T]he cases are nearly unanimous in holding that a cotenant is not an 'owner' when a petition for improvement is involved, and we hold that, as well, within the meaning of the ordinance in question those owning the entire interest in the property must join in order to make a valid protest." Id., 681.

High Ridge Real Estate Owner, LLC *v.* Board of Representatives

In *Woldan* v. *Stamford*, 22 Conn. Supp. 164, 164 A.2d 306 (1960), the court considered a provision in the Stamford charter that provided for a protest mechanism. The ordinance at issue provided that, "if *the owners of* [*20 percent*] *or more of the privately-owned land located within five hundred feet of the borders of such area*, file a signed petition with the zoning board, the decision would have no force or effect but would be referred to the board of representatives for approval or rejection." (Emphasis added; internal quotation marks omitted.) Id., 165. Relying on *Warren*, the court explained that, "[w]ithin the meaning of the ordinance involved in this case, those owning the entire interest in the property must join to make a valid protest." Id., 166. This interpretation was cited favorably by this court in *Stamford Ridgeway Associates* v. *Board of Representatives*, 214 Conn. 407, 418 n.5, 572 A.2d 951 (1990).

In *Stamford Ridgeway Associates*, this court quoted from a letter written by Attorney Robert A. Fuller. Attorney Fuller explained that "[i]t is also clear from [*Woldan* v. *Stamford*, supra, 22 Conn. Supp. 164], which interpreted [§ C-552.2] of the [c]harter, that all of the property owners of a specific piece of property must sign the [protest] petition for their land to be counted . . . ." (Internal quotation marks omitted.) *Stamford Ridgeway Associates* v. *Board of Representatives*, supra, 214 Conn. 418 n.5. Section C-552.2 of the charter required that, to be valid, a protest petition must be filed by either "[20] percent or more of the owners of the privately-owned land in the area included in any proposed amendment to the Zoning Map, or . . . the owners of [20] percent or more of the privately-owned land located within five hundred feet of the borders of such area . . . ." (Internal quotation marks omitted.) Id., 412–13.

Those cases are consistent with our treatment of § 8-3. In discussing the protest provision in § 8-3, this court explained that, "[b]ecause zoning legislation is in dero-

High Ridge Real Estate Owner, LLC *v.* Board of Representatives

gation of private rights, the legislature in this state has made provision for advertised public hearings, the filing of petitions of protest and other safeguards to guarantee a full and fair consideration of any original enactment or subsequent change of zone boundaries or regulations . . . and to afford protection to property owners against changes to which they object. . . . Strict compliance with the statute is a prerequisite to zoning action. . . . The provisions of the statute must be construed in a way to afford just protection to threatened rights of individual property owners as well as to further the public interest.'' (Citations omitted.) *Steiner, Inc.* v. *Town Plan & Zoning Commission*, supra, 149 Conn. 76.

Section 8-3 ''allows two different groups of objectors to trigger the two-thirds vote provision. Protests can be filed either by (1) owners of 20 [percent] or more of the area of the land included in the proposed zone change or (2) owners of 20 [percent] of the lots within 500 feet in all directions of the property included in the proposed change. The two-thirds vote can be required if the petition satisfies either category, and the two computations are not added together.'' (Emphasis omitted.) R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (4th Ed. 2015) § 4:2, p. 61; see General Statutes § 8-3 (b). ''With either type of protest petition, what is required is a protest filed by the owners (whether one owner or many owners) of at least 20 [percent] of certain areas. It is not the owners of 20 percent of the lots with whom we are concerned but the owners of 20 percent of the area of lots. [When] there is more than one owner of a lot, such as a husband and wife jointly owning a lot, those owning the entire interest in the property must jointly object to the change.'' (Footnote omitted; internal quotation marks omitted.) 9 R. Fuller, supra, p. 62.

Again, the aforementioned protest provisions dealt with a percentage of owners of the land or the owners

of a percentage of the land, not a strict number of signatures of landowners. In that respect, § C6-40-9 of the charter is unique. See, e.g., *Marks* v. *Bettendorf's, Inc.*, supra, 337 S.W.2d 594 (noting distinction between types of protest petitions in which "the sufficiency of the protest is . . . measured by the area represented" and those in which sufficiency is measured "by the number of the owners that signed"). Section C6-40-9 therefore requires us to also address the signature requirement and, more specifically, how the signatures of landowners are counted under this particular charter provision. To be sure, although our case law is helpful in understanding how we have interpreted the term "owner" of land for protest petition purposes and indicates that all joint owners must participate for the protest related to their jointly owned property to be valid, it does not resolve how the actual signatures of landowners should be counted once all joint owners have produced their signatures on a protest petition. We turn now to that question.

As we explained, the protest provisions that have been interpreted by the courts of this state are different from the provision at issue in § C6-40-9 of the charter. Indeed, the Connecticut cases that have previously interpreted protest provisions defined "owner," rather than "landowner." See, e.g., *Warren* v. *Borawski*, supra, 130 Conn. 681. Whether the term "owner," as described in our case law, has the same meaning as "landowner" in the charter provision at issue here is not a question we must answer in the present case. This is so because, even if we assume, without deciding, that the case law on "owner," related to percentage or area requirements, controls our interpretation of "landowner," as that term relates to the distinct signature requirement, the remaining question is what it means when all owners of land sign a petition, especially given that the protest provision in § C6-40-9 is focused solely on the number

High Ridge Real Estate Owner, LLC *v.* Board of Representatives

of signatures. In other words, the question is whether the signature of each of the owners counts toward the signature requirement.

The term "signature" is defined as "[t]he name of any person, written with his own hand to signify that the writing which precedes accords with his wishes or intentions . . . ." 4 Webster's New International Dictionary, supra, p. 2335; see, e.g., Funk & Wagnalls New Standard Dictionary of the English Language, supra, p. 2273 (defining "signature" as "[a] person's name, or something representing it, written, stamped, or inscribed by himself, or by one properly deputized, as a sign of agreement or acknowledgment"). The plain meaning of this term, as applied to § C6-40-9 of the charter, is that, so long as a person is a landowner, i.e., an owner of land, and that landowner writes his or her name on a protest petition, that is a signature. Indeed, when the protest petition is based on the number of signatures, rather than the percentage of land, the signature of each joint owner counts toward the total number of signatures required. See, e.g., *Rhodes* v. *Koch*, 195 Mo. App. 182, 186, 187, 189 S.W. 641 (1916) (holding "that those signing [the] remonstrance as husband and wife were each owners of the land and were *each to be counted as such*" for purposes of protest petition that required "a majority of the resident owners of lands" but did "not require a majority of the estates abutting the street" (emphasis altered)), cert. quashed sub nom. *State ex rel. Koch* v. *Farrington*, 195 S.W. 1044 (Mo. 1917).

Applying that definition of "signature" to § C6-40-9 of the charter, we conclude that, even if it is assumed that all owners of jointly held property must sign a petition in order to be deemed landowners, when the signature of each joint owner is affixed to the protest petition, a plain reading of § C6-40-9, which simply requires the signatures of at least 300 landowners, dic-

High Ridge Real Estate Owner, LLC *v.* Board of Representatives

tates that each landowner's name written on the petition must count toward the total number of signatures. See, e.g., id. Stated succinctly, if all joint owners sign, all of their signatures are counted.

We find no support for the idea implicitly adopted by the trial court that a joint landowner should not have his or her individual signature counted toward satisfying the signature requirement for purposes of § C6-40-9, even when all the other owners of the jointly held land have also signed the protest petition.[8] As we explained, we assume, without deciding, that, when one owner of jointly held land signs and the other owners do not, the law does not consider the one signature valid because it does not represent the full ownership in land for purposes of a protest petition. It does not follow, however, that, when all joint owners *do* sign, their signatures morph into one name written on the petition merely because they own a parcel of land together. Section C6-40-9 requires a certain number of signatures of landowners, not a certain number of parcels of land. Consistent therewith, each name written on the petition is a signature. Thus, even if we accept the premise that all joint owners must sign, when that requirement is met, each owner's name written on the petition counts as a signature of a landowner. By requiring all joint tenants to sign, but counting each of the signatures separately, we conclude that our interpretation aligns with the policy behind protest petitions, which affords "just protection to threatened rights of individual property owners as well as to further the public interest." *Steiner, Inc.* v. *Town Plan & Zoning Commission*, supra, 149 Conn. 76.

In the present case, the parties stipulated, in relevant part, that "120 signers were the sole owners of privately owned land in [the city]," "240 signers were the owners

[8] See footnote 4 of this opinion.

High Ridge Real Estate Owner, LLC *v.* Board of Representatives

of privately owned property in [the city] where there were other owners with an interest in the property who also signed,'' and ''110 signers were the owners of privately owned property in [the city] where one or more owners with an interest in the property did not sign . . . .''[9] On the basis of that stipulation, we conclude that, for the purposes of § C6-40-9 of the charter, there were valid signatures of at least 360 landowners— the signatures of 120 sole landowners and the signatures of 240 joint landowners. Put differently, the names of 360 landowners were written on the protest petition. The trial court therefore incorrectly found that there were ''only 240 valid signatures . . . .'' (Footnote omitted.)

Accordingly, we conclude that, despite the fact that the board of representatives did not have the authority to determine the validity of the protest petition, it nevertheless was presented with a valid petition, and, therefore, could reach the merits of the zoning amendment. Because the trial court concluded that the petition was not valid, it did not address the plaintiff's claim that the board of representatives erred in rejecting the amendment. Because we now conclude that the petition was valid, we remand the case back to the trial court for consideration of the plaintiff's claim regarding the decision by the board of representatives on the merits of the amendment.

The judgment is reversed and the case is remanded for consideration of the plaintiff's remaining claim concerning the decision of the board of representatives on the merits of the zoning amendment.

[9] Although this stipulation is not a model of clarity, we understand the stipulation to mean that 240 signers were the owners of privately owned property in Stamford where all joint landowners also signed the protest petition, which is consistent with the representation of Valerie T. Rosenson, the legislative officer of the board of representatives, who determined that ''240 signers were determined to be the joint landowners of 120 parcels of land in the [city] . . . .'' (Citation omitted.) See footnote 4 of this opinion.

High Ridge Real Estate Owner, LLC *v.* Board of Representatives

In this opinion ROBINSON, C. J., and KAHN, ECKER and KELLER, Js., concurred.

D'AURIA, J., concurring. I concur in the result because I agree with the majority that the Board of Representatives properly reached the merits of the zoning amendment, and, thus, the matter should be remanded to the trial court to consider the plaintiff's claims regarding that decision. I also agree with the majority that the Stamford Charter delegates authority to the Zoning Board of the City of Stamford to validate a protest petition before referring it to the Board of Representatives. However, as in my dissenting opinion in the companion case we also decide today; see *Strand/BRC Group*, *LLC* v. *Board of Representatives*, 342 Conn. 365, 390, A.3d      (2022) (*D'Auria, J.*, dissenting); which I incorporate by reference, I do not agree that the Board of Representatives' proper exercise of authority hinges on whether it was presented with what the majority declares to be a "valid" protest petition. The majority concludes that, unlike the situation in *Strand/BRC Group*, *LLC*, the protest petition in this case contained the requisite number of signatures, and, therefore, the Board of Representatives properly considered the merits of the amendment. As I discussed in detail in *Strand/ BRC Group*, *LLC*, I take issue with the majority's holding for two reasons. First, I believe that the Board of Representatives' exercise of authority on the merits of an amendment does not depend on the validity of the protest petition because the signature provision is directory, not mandatory. Second, I believe that, because the plaintiff has no vested right in a particular legislative outcome, the court should refrain from intervening in the local legislative process undertaken by the Board of Representatives, such as by examining how signatures in the petition were counted. Accordingly, I respectfully concur.